JOHN CHANDLER & al. versus SAMUEL GOODRIDGE & al.

Where commissioners to make partition assigned certain land to one, and made the following provision for the benefit of another, who had land adjoining, whereon was a gristmill, assigned to him : "excepting the privilege of the county road crossing said land, and a privilege of a pass way over the floom on the south side of the millpond, twenty feet wide, leading from the county road at the south end of the bridge to the gristmill, where said road is now traversed;" it was held :

That this gave but the right of passing and repassing along the way described in a safe and convenient manner : —

That the owner of the land had the right to use the pass way for any purposes whatever, provided he did not interfere with such right of passage : —

That if a railing was necessary to make the pass way safe and convenient, the party entitled thereto had the right to erect one, but in such manner, if it could be done, as not to prevent the owner of the land from rolling logs across the same into the millpond, or it would be subject to be removed for that purpose : —

That the pass way was to be located on the south shore of the millpond as it was at the time of the partition : —

And in an action of trespass quare clausum against the owner of the land for entering upon the pass way of the plaintiff, tearing down his railing, and "encumbering and impeding his rights of passage," in general terms, that the plaintiff could not recover damages for the defendant's suffering the pass way to be encumbered by lumber and logs.

THE action was trespass, quare clausum, for entering upon the pass way of the plaintiffs, tearing down their railing, and "encumbering and impeding their right of passage." At the trial, before SHEPLEY J. it appeared that a partition of certain real estate was made in 1837, by which land was set off to John Goodridge, whose rights the defendants have, which included within its boundaries the premises where the acts were done, complained of as trespasses; and that at the same time a reservation, or exception, was made to one whose rights the plaintiffs now have, in these words. "Excepting the privilege of the county road crossing said land, and a privilege of a pass way over the floom on the south side of the millpond, twenty feet wide, and leading from the county road at the south end of the bridge to the gristmill where said road is now travelled, with the privilege of drawing one quarter part of the

water from said millpond at all times." Since the partition
there has been on the part set off to the plaintiffs a sawmill,
shingle machine and gristmill; and on the part set off to the
defendants a sawmill, gristmill, and fulling and carding mills.

The passage way was on the south side of the millpond, and
in January, 1841, the plaintiffs erected a railing on the side to-
wards the water by laying logs at the bottom, putting posts on
the logs and nailing planks to the posts. In Feb. 1841, the
defendants tore down about thirty feet of this railing, and roll-
ed their logs over the passage way, through this opening, into
the pond. The defendants introduced evidence tending to
show, that they had for several years, when the pond was
frozen, rolled logs into the pond at that place, and that it was
the usual and most convenient rolling place for logs in the
winter season. There was also evidence introduced by the
plaintiffs, tending to show, that logs had been rolled into the
pond by the defendants several rods above this place and sev-
eral rods from the pass way, and that the defendants might
have rolled in their logs on their own land more conveniently
than where the railing was torn down, and that the defendants
encumbered the way with logs and timber. This was contro-
verted by testimony on the part of the defendants. There
was also a question made between the parties, whether the
railing torn down was, or was not, within the limits of the
pass way to which the plaintiffs were entitled. There was also
testimony introduced by the parties tending to show that a
railing was, and was not, necessary. The plaintiffs offered to
prove, that *in the opinion of the witnesses,* who had examined
the pass way, a railing was necessary. This was objected to,
and ruled to be inadmissible.

The Judge instructed the jury, that the plaintiffs had noth-
ing more than a mere right of a safe and convenient passage
for passing and re-passing, on the pass way, and that the de-
fendants had the right to use the same for any purposes what-
ever, provided they did not interfere with the right of the
plaintiffs in manner aforesaid; that if the railing was necessary
to make the pass way safe and convenient, the plaintiffs had

the right to erect it; but if a railing could be erected in such manner as to make the pass way safe and convenient, and the defendants could also have a rollway over the pass way, then the defendants had a right to remove the railing, if it was not so constructed as to afford the defendants the means of rolling their logs across the same; that the plaintiffs should locate the pass way on the south side of the shore of the millpond, where the shore was at the time of the partition; that it could be extended twenty feet in width from that shore; that if in putting up the railing the plaintiffs had put the posts thereof out of the limits and further into the pond than where the shore was at the time of the partition, then the defendants had the right to remove the railing; and that there was no claim in the plaintiffs' declaration for encumbering the pass way with logs and lumber, and therefore nothing could be recovered for that cause.

The verdict was for the defendants, and the plaintiffs filed exceptions to the rulings and instructions of the Judge.

*Wells* argued for the plaintiffs, contending, among other grounds, that an exception wholly prevents whatever is excepted from passing. Co. Lit. 47 (a).

The soil covered by the pass way belongs to the plaintiffs. The extent of the exception, and its location, is given, and the term *pass way* was used by the commissioners to designate the object, and not to limit the right. It is placed on the same ground as the road, and both are alike excepted from any right of the defendants thereto.

But if the soil does not belong to the plaintiffs, they are entitled to the exclusive use of the pass way, and not merely to a concurrent one with the defendants. It is the only approach the plaintiffs had to their mill, and the commissioners intended it for their sole use; and such is the fair import of their language.

But if the right to use the pass way was concurrent, and they are tenants in common, still the conduct of the defendants was not legal or justifiable. The plaintiffs erected a safe railing without objection from the defendants, and it was torn

down without notice. For this the defendants are liable. Co. Lit. 200 (a); *Newton* v. *Newton*, 17 Pick. 201; *Keay* v. *Goodwin*, 16 Mass. R. 1; *Maddox* v. *Goddard*, 15 Maine R. 218; *Porter* v. *Hooper*, 13 Maine R. 25; 1 Chitty on Pl. 180.

This was for a pass way only, and the defendants had no right to use it for any other purpose. The rolling of logs over the road is wholly inconsistent with its being used for a passage way.

*Bradbury*, for the defendants, said that they merely took down enough of the railing to use their ancient place for rolling logs. The land was set off to the defendants, and the plaintiffs had a mere easement over it. The defendants could use the land for every purpose not inconsistent with the right of passing. " The privilege of a pass way" is all the plaintiffs have, and the very terms show that this mere right to pass was intended, and nothing more. Passage way, or pass way, means only a right of going over another's land, and not the land itself. Hilliard's Abr. 257; 2 Cruise, 124; 16 Mass. R. 33; 1 Yeates, 167; 3 Kent, 419. Such way can be used only according to the grant, and there can be no deviation from the place stated. Cruise, title Ways, $ 16; Douglass, 745; *Jones* v. *Percival*, 5 Pick. 485; *Miller* v. *Bristol*, 12 Pick. 550; 1 T. R. 560.

The instruction as to the location of the passage way was correct. The pond was excluded from it. *Bradley* v. *Rice*, 13 Maine R. 198.

The opinion of the Court was prepared by

Tenney J. — The land set off in the partition to John Goodridge by metes and bounds, with all the privileges and appurtenances thereto belonging, embraces the premises in dispute, and gives a title, subject only to the exception contained in the commissioners' report. The counsel for the plaintiffs contend that this exception carries a fee in the land described as a passage way over the floom on the south side of the pond, twenty feet wide and leading from the county road at the south end

of the bridge to the grist mill, where said road is now travelled ; but if the fee is not by the language of the exception in the plaintiffs, it is insisted, that the privilege in them is exclusive, and that the defendants have no right to participate in its enjoyment.

The plaintiffs are entitled to the privilege of a passage way ; this is the language on which they endeavor to maintain their action, and by the construction put thereon, it must stand or fall. The word *passage way* cannot be any broader in its signification than *way* or *highway,* and can have essentially no different meaning. It must have been used to convey an idea similar to that which is attached to the term *way,* although it was not contemplated, that it would be located by authority of law, like town ways or highways.

A way is an incorporeal hereditament, and is a right of passage over another man's ground. 3 Kent's Com. 337. In *Huslius* v. *Shippam,* 5 Barn. & Cres. 221, the Court say, " a right of way or a right of passage for water (where it does not create an interest in the land) is an incorporeal right and stands upon the same footing with other incorporeal rights, such as rights of common, rents, advowsons, &c. *Terms de la Ley,* a book of great antiquity, defines an easement to be a privilege, that one neighbor has of another by charter or preemption without profit, and instances, " as a way or sink *through his* land or such like." In *Comm.* v. *Peters,* 2 Mass. R. 125, Sedgwick J. remarks, " where land is appropriated to the use of a highway, the use only is taken ; and except so far as that goes, the right of soil remains precisely as it was before. So much so, that the owner of the soil may recover in ejectment, subject however to the easement ; and he has a right to the freehold and all the profits above and under ground, except only the right of passage." In *Perley* v. *Chandler,* 6 Mass. R. 454, Parsons C. J. says, " by the location of a way over the land of any person, the public have acquired an easement, which the owner of the land cannot extinguish or interrupt ; but the soil and freehold remain in the owner, although encumbered by the way. And every use to which the land

may be applied, and all the profits, which may be derived from it, consistently with the continuance of the easement, the owner can lawfully claim."

The grant of a sawmill, " with a convenient privilege to pile logs, boards and other lumber," conveys only an easement in the land used for piling. *Thompson & al.* v. *Androscoggin Bridge*, 5 Greenl. 62.

In the case at bar the privilege to the plaintiffs cannot by any construction extend beyond the right of a passage way, which gives to them an easement only over the land in question.

The right of the defendants to the land is encumbered by the right of the plaintiffs to pass and repass over it as described in the exception. To the plaintiffs' right, is incident that of rendering the passage way at all times safe and convenient; and for this purpose he could erect railings where the situation of the ground made it proper for such enjoyment. But in doing this he could not unnecessarily deprive the other party of any of the rights, which flow from his title to the fee in the land; he could not, unless essential to his own privilege, exclude the defendants from any use, to which they might wish to appropriate the land. The pond within their limits was equally the freehold of the defendants, who were entitled to the free and uninterrupted access from one to the other for all and every purpose not inconsistent with the right secured to the plaintiffs. Unless it were necessary to the enjoyment of the easement belonging to the plaintiffs, they could not take to themselves any exclusive occupation of the premises, or exclude therefrom the defendants.

The latter could roll logs from any part of the land falling to them on the partition, unless it impaired the plaintiffs' right of passage. If the rights of both could exist together without interference, the law will allow and require it. If the privilege of the plaintiffs could have been preserved by their erecting a railing, which would have permitted the enjoyment of the defendants, it was the duty of the plaintiffs so to have constructed it, and by omitting to do this, the defendants' rights were

invaded, and they were justified in causing the removal. The cause was submitted to the jury on these principles, and the verdict cannot be disturbed therefor.

The passage way was to be located on the south side of the millpond, and to be twenty feet wide, and to extend from the county road to the gristmill. A way imports a right of passing in a particular line. If a man grant a right of way over his land, designating the course of it between certain *termini*, the grantee has no right to deviate from the course designated. A right of way can only be used according to the grant, or the occasion from which it arises. One having a right of way in, through, over and along a slip of land, cannot have a way across the land. These doctrines, found in the cases cited for the defendants, are reasonable, and are well established. Whenever an easement exists by grant, it may be enjoyed to the extent of the legitimate meaning of the terms used, but to that it must be confined.

In this case the termini, the width of the passage, and the part of the lot, where it was to run, were fully expressed in the Commissioners'. report. The plaintiffs had no right to deviate from the limits as laid down. The millpond, as it existed at the time of the partition, was excluded, so that the passageway would be southerly thereof. If any erections were made in, or over the pond as it was at the time of the division, it was unauthorized, and could be legally removed by the defendants.

The writ contains nothing upon which the jury could have assessed damages for incumbering and obstructing the passage with logs, and the instructions to the jury were in this respect unobjectionable. .

The evidence offered, that in the opinion of witnesses, the railing torn down was necessary to the safety and convenience of the plaintiffs in the enjoyment of the passage was properly excluded. That was the question for the jury to determine from all the facts, and not from the opinions of others of what their verdict should be.

*Exceptions overruled.*