ARTHUR T. DRUMMOND et als. *vs.* DANA P. FOSTER et al.

Kennebec.    Opinion December 15, 1910.

*Easements.   Extent of Right.   Right of Way.   Construction of Grant.   Rights of Owner of Servient Estate.*

1.  When the grant of a right of way is silent as to its width, it will be held to be of a width suitable and convenient for the ordinary uses of free passage to and from the grantee's land.  If the particular object of the grant is stated, the width must be suitable and convenient with reference to that object.

2.  What is suitable and convenient depends upon the circumstances of each case.  The presumed intention of the parties is to be found in the instrument itself, read in the light of existing relevant conditions and circumstances, and it may be interpreted, in case of doubt, by the practical construction which the parties themselves have placed upon it.

3.  When the grant of a right of way is silent as to width, and the right of way is to be " back " of a store which the grantor contemplated building on the lot, the placing by the grantor of the rear end of the building, subsequently erected, fifteen feet from the rear end of the lot is not of itself alone significant of an intention that the end of the building should mark, or be upon, the side line of the right of way.

4.  The owner of the servient estate over which a right of way has been granted may make any lawful use of his land that he chooses, not inconsistent with the right of the owner of the right of way.   He cannot narrow the way so as to render it less suitable and convenient than it was before.

5.  Upon the record, it is considered that the original grant was intended to be, and was, of a right of way, sufficiently wide for the purpose of a thoroughfare, and not for turning teams upon it, that the plaintiffs are not entitled to the use of the full width between the rear end of the defendants' store and the rear end of the lot, and that the erections made by the defendants, which are complained of, do not in any substantial degree render the way less convenient and suitable for use as a thoroughfare, and have not deprived the plaintiffs of any right.

VOL. CVII 26

On report.   Judgment for defendants.

Action on the case to recover damages for an alleged obstruction of a right of way.   Plea, the general issue.   At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Harvey D. Eaton*, for plaintiffs.

*Dana P. Foster, and Carroll N. Perkins*, for defendants.

SITTING :   EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

SAVAGE, J.   Case for obstructing or narrowing the use of a right of way.   The case comes up on report.   The facts as we gather them from the report of the evidence are as follows :—

On October 4, 1825, one Edward Esty owned a lot of land on Main street in Waterville adjoining on the north a lot owned by George W. Osborne.   He also owned a ten foot strip adjoining the easterly end of Osborne's lot.   At that time there was a store upon the Osborne lot, but the Esty lot was vacant.   On the day mentioned, Estey conveyed to Osborne the ten foot strip in the rear of the latter's store, and "also a free right of way with teams, carriages, etc., on the southerly side of a store to be erected by me, on my land, and back of said contemplated store to the land of said Osborne's in rear of his store."   This right of way along the southerly side and across the easterly end of the Esty lot gave Osborne access from Main street to his own land in the rear of his store.   Esty subsequently built a store on his own lot, the easterly end of which was fifteen feet westerly from the easterly end of his lot.   The Osborne, or dominant estate has come down to the plaintiffs, and the Esty, or servient estate, to the defendants.

It is in evidence, and not denied, that formerly, and until 1888, the passage-way of which the right of way was a part was used as a thoroughfare, and that teams could and did pass through it across the plaintiffs' land to some outlet beyond.   But in 1888 the store on the plaintiffs' lot was extended across the passage-way, forming at that point a cul-de-sac.

For many years a narrow stairway led down to the ground from the rear door in the store on the defendants' lot. This stairway was in the fifteen foot strip at the east end of the lot. In 1883 the stairway was taken away, and a shed, thirteen feet long and occupying four and one-half feet of the fifteen foot strip was attached to the store. From the shed, and twelve feet and eight inches from the ground, some kind of a structure was built to the east end of the lot. The easterly end of this structure is now supported by four posts, three feet apart, standing inside, but touching the defendant's line. The largest of these posts is six inches square. The effect of the shed on one side and the posts on the other and the structure overhead is to narrow the passage-way on the fifteen foot strip to ten feet, with a height of twelve feet and eight inches. The general passage-way is not of uniform width. At the entrance at Main street it is bounded on each side by buildings. It is 9.55 feet wide at that point. Further on it is narrowed at one place to 8.1 feet.

The plaintiffs complain of the narrowing of the passage-way by the shed and the posts, and contend that they are entitled to the use of the full width of the fifteen foot strip. The defendants admit that the plaintiffs have now the right of way which Esty granted to Osborne in 1825. They do not claim that it has been limited in width by prescription. But, since the width of the right of way was not defined in the grant of 1825, they say that the grantee obtained a right of way for such width only as was reasonably suitable and convenient for the accomplishment of the purposes of the grant, according to the intention of the parties.

Inasmuch as the passage-way as restricted by the defendants' structures is still nearly two feet wider than it is at another point nearer Main street, we conceive that the gist of the plaintiffs' complaint of injury is, not that the defendants have so narrowed the passage-way that any teams which could get into the passage-way from the street could not pass through it to the defendants' land, but that they have narrowed it so that teams cannot turn around upon the defendants' land. The only testimony in the case on this point is that of one of the plaintiffs who testified that the structures of the defendants had interfered with the plaintiffs' use of the

passage-way.   He said that there was "scanty room within that
space to get in there with a team and out again, because there is
no outlet except at one end, consequently all the room is needed
that is there.   We have to turn a team at that point."

The rights of these parties must depend upon the interpretation to
be given to the grant of 1825.   No rights have been acquired since
that time, nor have any been lost.   The grant itself was silent as to
the width of the way.   It only said that it was to be a "free right
of way with teams, carriages" etc., and that it was at that point to
be "back" of a store which the grantor contemplated erecting on
his own lot.

It is well settled that when the grant of a right of way is silent
as to its width, it will be held to be of a width suitable and con-
venient for the ordinary uses of free passage to and from the grantee's
land.   And if the particular object of the grant is stated, the width
must be suitable and convenient, with reference to that object.
*Atkins* v. *Bordman*, 2 Met. 457.   And this is merely construing
the grant in accordance with the presumed intentions of the parties.
What is suitable and convenient must necessarily depend upon the
circumstances of each particular case.   The presumed intention of
the parties, of course, is to be found in the instrument itself.   But
the instrument may be read in the light of relevant conditions and
circumstances existing at the time.   *Proctor* v. *Railroad Co.*,
96 Maine, 458.   And the interpretation of it may be aided, in case
of doubt, by the practical construction which the parties placed
upon it by their conduct, by acts done by one party and acquiesced
in by the other, especially when such conduct is proven to have
continued for a long time.   And the proved conduct of the parties
is sometimes of great importance in the case of ancient grants, when
other evidence of the situation and circumstances has faded away.
*Bannon* v. *Angier*, 2 All. 128.

Now the two practical questions presented by this record are
these.   After applying the foregoing rules of interpretation, have
the plaintiffs, upon whom is the burden, shown (1.) that they are
entitled to the use of the full width of fifteen feet, on the defend-
ants' land?   or if not, have they shown (2.) that they are entitled

to a width suitable and convenient for the turning of teams thereon? Under the circumstances of the case, we think they must show one or the other, or their suit must fail. We think they have shown neither.

I.   The foundation of the plaintiffs' claim of a fifteen foot right of way seems to be based upon the fact that Esty in 1825, or later, placed his contemplated store fifteen feet from the rear end of his lot, and that the space between the store and the lot has remained open ever since, except for the obstructions complained of.   There is no evidence of any user of the passage-way as a right of way for its full width at any time.   But in support of this claim the plaintiffs cite and rely upon *George* v. *Cox*, 114 Mass. 382. In that case there was a grant of "a right of a free passage-way from Medford road by the easterly side of the meeting house to said lot of land," lying northerly, and granted by the same deed. Prior to the grant, the then owners had erected a fence running east and west on the line between the lot which they subsequently conveyed and the remaining lot which they retained, across which the right of way was located.   This fence extended to a point eighteen feet from the easterly side line of the lot, and no further. Horse sheds (for the meeting house) were also erected along the dividing line between the lots, as far as the fence extended, leaving eighteen feet between the sheds and the side line of the lot.   After the grant of the right of way, the trustees of the church, to whom the servient lot had been conveyed, erected a fence east of the church, in a line with the east end of the horse sheds, and eighteen feet distant from their east line, the whole length, after which the eighteen foot space was graded and made passable and convenient for travel on foot or with carriages, for its entire width.   After the way had remained in that situation for at least eleven years, the trustees of the church caused the fence to be removed towards the east line of the lot, and thus narrowed the passage-way.   It was claimed that the parties themselves, by building the fences and the sheds had definitely fixed the limits of the way, making it eighteen feet wide. As to this claim, the court said, "The deed does not fix or define the width of the way granted.   But if the grantee, at the time of

the grant, practically located the way of a width of eighteen feet, and the grantors then and for a long time subsequent acquiesced in this location, the parties intending to fix the width, this would operate as an assignment of the way, would show what the parties intended by the deed, and would have the same legal effect as if this width had been fixed by the deed." This is undoubtedly a correct statement.

But the case at bar is different. The building of a fence along an indeterminate right of way, and acquiescence therein may be strongly evidential of the intent of the parties to mark the line of the way. Fences are used to mark lines. They are ordinarily placed upon lines, rather than a few feet distant from them. The stopping of the cross fence and horse sheds in the Massachusetts case eighteen feet from the line of the lot was significant of the understanding of the parties. But we think that the erection of a store building by the owner upon a lot across which there is a right of way is not of itself alone significant of a purpose thereby to assign, or to define the limits of, the right of way. It is rather to be presumed that the dimensions of the building and its location upon the land are determined by the purposes for which it is erected, by the needs of the business to be carried on therein, the uses which the owner himself desires to make of the remaining land, and perhaps by the pecuniary means of the owner. If he can, he will build as long a store as he needs. He will not build it any longer for the sake of having it mark the line of a right of way. There is no other evidence to sustain this claim of the plaintiffs. The case is barren of evidence of any uses made and acquiesced in, at least, until recent years, of the right of way over the defendants' land, except as a thoroughfare, for passing through with teams, one way or the other. And such a use has no tendency to show that the parties intended the right of way to be fifteen feet wide, or to be any wider than was reasonably suitable and convenient for the purposes of the way. On the other hand, it appears that for many years two or three feet of the fifteen was used, without objection by the owner of the servient estate, for a stairway leading down from the back door of his store.

II. The plaintiffs are entitled to a suitable and convenient way. The defendants have the right to use their land in any way they please, not inconsistent with the plaintiffs' right. *Chandler* v. *Goodridge*, 23 Maine, 78 ; *Morgan* v. *Boyes*, 65 Maine, 124 ; *Atkins* v. *Bordman*, 2 Met. 457. The defendants cannot narrow the way so as to render it less suitable and convenient than it was before. In view of the fact that the present passage-way is wider on defendants' land than it is at other points, so that any team which can get into it from the street can pass through that part of it which is on the defendants' land, without any difficulty, it is obvious that the way is still suitable and convenient for passage through. And it follows that if the plaintiffs have no greater right than to pass through, they have not been injured, and this action cannot be maintained.

As already stated, at the time this right of way was granted, and for many years after, the passage-way extended across the plaintiffs' open lot to some outlet beyond. The space in the rear of the store on the plaintiffs' land was open and clear. The passage-way was in fact used as a thoroughfare. There is no evidence that it was used in any other manner. No reason has been suggested why at that time the owner of the dominant estate had any occasion to use the servient land as a turning ground, or that it was intended by the parties that the right of way should be wide enough to turn upon. And we are not persuaded that it was so intended. Our views on this point are strengthened by the very narrowness of the full width of the passage,—fifteen feet. While it may not be impossible to turn some kinds of teams on a fifteen foot space, it is very impracticable. It is especially so for such teams as would be expected ordinarily to be driven to the rear ends of stores.

The rights of the plaintiffs are to be determined as of the time the right of way was granted. No change since then in the condition of their property or in their needs has enlarged the grant. When the plaintiffs extended their store across the passage-way in the rear, they cut themselves off from using the way as a thoroughfare. But this did not enlarge the plaintiffs' right to use the right

of way.   They had just the same right afterwards as before, and no more.   And the evidence fails to satisfy us that that right included the right to·a way wide enough for a team to turn round upon it.

The result is that there must be an entry of,

*Judgment for the defendants.*