FRANCIS DANA *vs.* DANIEL A. SMITH.

Washington.    Opinion March 15, 1918.

*General rule to be applied in the interpretation and construction of deeds.*

On report to determine the character and location of a right of way, and whether that way has been interfered with or obstructed by the defendant.    The controversy is almost wholly over issues of fact.    The rights of the plaintiff depend upon a deed given by the defendant to the plaintiff's predecessor in title.    The familiar and well established rules of law, under which deeds are to be interpreted, apply in this case.    After a careful examination of the evidence, and the deed, in the light of those rules,

*Held:*

1.   That the way to which the plaintiff is entitled is a foot path and not a cart or wagon way;

2.   That the way to which the plaintiff is entitled is that described in the deed as being "by the shore of the flowage;"

3.   That the way to which the plaintiff is entitled has not been obstructed by the defendant.

Action on the case to recover damages for the obstruction of a right of way claimed by plaintiff.    Defendant filed plea of general issue and also filed brief statement denying right of way claimed by defendant.    At close of evidence case was reported to Law Court for final determination upon so much of the evidence as legally admissible.    Judgment for defendant.

Case stated in opinion.

*Frederick Bogue, and R. J. McGarrigle,* for plaintiff.

*Ashley St. Clair, A. D. McFaul, and J. F. Lynch,* for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, PHILBROOK, JJ.

PHILBROOK, J.    This case has been before us on exceptions, *Dana v. Smith,* 114 Maine, 262, and now comes on report, for determination of the rights of the parties upon so much of the evidence as is legally admissible.    The cause of action claimed by the plaintiff is obstruc-

tion of and interference with a right of way from a public town way over and across land of the defendant to land of the plaintiff.

In the year eighteen hundred ninety-five the defendant sold to Sopiel Haney, now deceased, about an acre of land which jutted into Gardner's lake but was not contiguous to any public way. The deed provided however that "a right is also given Sopiel Haney to pass to the highway by the shore of the flowage, such as will convene his purpose." In the former consideration of this case we held that the habendum clause in the deed gave an estate in fee to the grantee, and that whatever right of way he acquired by the deed was capable of grant. The plaintiff, by deeds from the heirs of Sopiel Haney, holds the same right of way which was conveyed to Haney by the defendant. The plaintiff is not contending for a right of way by necessity but by grant. This requires a careful examination and interpretation of the original deed from Smith to Haney. We have recently had occasion to say, upon the authority of *Perry* v. *Buswell,* 113 Maine, 399, "that the cardinal rule for the interpretation of deeds is the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances. It is the intention effectually expressed, not merely surmised. This rule controls all others. Technical rules of construction of deeds may be resorted to as an aid in getting at the intention. And technical rules may be controlling, when nothing to the contrary is shown by the deed. The ancient rigidity of technical rules has given way in modern times to the more sensible and practical rule of actual expressed intention."

The plaintiff, in his declaration, claims a right to a "cartway" across the defendant's premises. The deed from Smith to Haney grants a right to pass, such as would convene the grantee. Haney, grantee in the Smith deed, was an Indian, living and earning a livelihood in a manner now common to that aboriginal race of men. He made baskets, axe-handles and canoes for sale to those who might wish to buy. While there is evidence that Haney's boys owned horses after the death of their father, there is none that he owned any, or used any, so as to need any cartway for his convenience. Nor is there any evidence to show that when the deed was given there were customers desiring to come by automobile or other conveyance to the land described in the deed; nor did the grant purport to convey to Haney or to the general public any right to pass and repass with

teams or automobiles. The defendant testified that when he gave the deed to Haney they went to the premises to mark out the right of way; that they went along under the high water mark until they came to a place near the land which Haney bought; that Haney selected the right of way and with his knife marked bushes to indicate the location of the way; that he made no claim that he desired to pass with teams; that Haney said he "wanted a path wide enough to carry a basket;" that he said "the principle part of his outlet would be by water and ice" and that he "could go down there by a canoe." The defendant further testified that at extreme high water one could not walk where Haney·marked the way, but that such conditions lasted only a short time and that there was a path around the shore. The defendant also testified that the way thus indicated by Haney was all he wanted, that it suited him and that he gave his reasons for the same.

Taking into consideration the description of the way given in the deed, together with all the testimony disclosing the existing conditions and circumstances of the grant and of the parties, it is the opinion of the court that the right of way created by the deed was not a cartway, or a way to be used by automobiles, or animal drawn vehicles, but simply a foot path.

There is controversy, however, as to just where the right of way, as agreed upon by Smith and Haney, existed upon the face of the earth. An examination of the plan which is incorporated in the record shows that there was a path close to the flowage on the easterly shore of defendant's land, beginning at a point where the highway very·nearly touched the flowage, and ran along·close to that easterly shore, from the highway to a bog, over which there appears to be a bridge marked "fill bridge;" that here the path crossed the bog by the bridge and continued along what is marked "Smith wood road to lake," to the little house in which Haney lived. This path shows the location of the way as claimed by the defendant. The "wood road," according to the plan, began at the defendant's buildings, quite a distance westerly from the point where the path began, ran to the "fill bridge," then over the bridge and across the Haney land to the lake. There appears upon the plan another way, or road, beginning at the highway just westerly from the point where the path began, and after running a few feet near the path it swerves a little farther away from the shore and joins the "Smith wood road" a short distance southwesterly from

the "fill bridge." This last named road, and its extension by the "wood road" and the "fill bridge," to the Haney house, is the way claimed by the plaintiff. It appears that before the plan was made by the surveyor a portion of the land, over which passed what we will call that part of the plaintiff's road leading from the highway to the "wood road," had been plowed and seeded, so that the surveyor located it where in his judgment "the old road used to go." In other words that part of the road claimed by the plaintiff had no visible existence, when the plan was made, for a distance of some two hundred fifty feet from the highway, but beyond that the road remained, according to the testimony of the surveyor. It should be observed, however, that on cross examination the surveyor testified that the part of the road which he said was remaining was a portion of the Smith "wood road" and not a portion of the old road leading from the highway to the "wood road" and which we have called the plaintiff's road. The surveyor also testified that there was a fence, made of stakes and barbed wire, across the location of this so-called old road. This is the interference and obstruction complained of by the plaintiff. Whether that fence obstructed the path or way claimed by the defendant, we will refer to later.

The plaintiff, by his own testimony and that of other witnesses, one being the son of Sopiel Haney, offered evidence that he, and these other witnesses, had travelled this so-called old road, in going to the Haney place, and had seen other people do the same. But the evidence falls far short of establishing any prescriptive rights for Haney, or his successors in title, over this so-called old road. The plaintiff urges, however, that since these things were true they contain strong elements of presumption that when Smith granted a right of way to Haney the actual way granted was by this so-called old road. This presumption encounters the positive testimony of the defendant that he did not grant the right of way over the so-called old road, and that Haney did not so claim when the right of way ·was selected by the latter. The defendant further testified that this so-called old road was not in existence at the time he gave the deed to Haney and explains its existence later by saying that he desired to cultivate the land, where later this so-called old road was used, that the land was very rocky, that he desired to haul these rocks over to where he made the "fill bridge," that while this was being done there were bars in the fence standing where the present fence is, that he used this so-called

old road for something like twelve years, that during that time others passed through these bars and over the so-called old road without consent or objection on his part. Thus he offers his explanation of the passing testified to by plaintiff and his witnesses, and says where he no longer needed this so-called old road for his own convenience he closed the bars and erected a sign forbidding any further passing.

The defendant is corroborated by several witnesses as to the impassable condition of the premises, where the so-called old road was claimed by the plaintiff to exist, until Smith removed the rocks, and that no road ever existed until those rocks were removed. It is uncontradicted that after purchasing the land Haney moved his house, not by the "old road" which plaintiff claims existed and was open to Haney, but by the road leaving the highway near the Smith homestead. All this testimony is opposed to the presumption of the plaintiff, as referred to above, and we think the plaintiff has failed to show by a fair preponderance of the evidence that the way which he purchased was the so-called old road.

It is suggested in argument that there was a new way substituted for the original one, by oral agreement of Smith and Haney, after the original one was marked out. It appears that about a year after Haney went there he complained that his road was wet and asked permission to "walk inside." The defendant says he told Haney that if he could make a road through the bushes, but keep outside the garden, he might do so, at times when he could not use his own way conveniently. But there is no evidence that the original way was permanently abandoned and a new one substituted therefor. At best it only appears that as a matter of accommodation Smith allowed Haney to "walk inside" temporarily.

It only remains to decide whether the way which Haney and his successors in title were entitled to is obstructed by the plaintiff. That way is the path as claimed by the defendant. The plaintiff claimed obstruction to this path by the fence. The defendant claimed that the only obstruction is growing bushes which he was not bound to remove. The evidence is conflicting but a careful examination leads us to the conclusion that there still exists, except perhaps as partially obstructed by bushes, the "path wide enough to carry a basket," which was the right of way which Haney asked for and obtained, and that this way has not been obstructed by the defendant.

*Judgment for the defendant.*