**Arthur C. GENDRON and Mary Blanche Gendron**

v.

**CENTRAL MAINE POWER COMPANY.**

Supreme Judicial Court of Maine.

Nov. 23, 1977.

 

Berman, Berman & Simmons, P.A., by Gary Goldberg (orally), Jack H. Simmons, Lewiston, for plaintiff.

Skelton, Taintor & Abbott by Charles H. Abbott (orally), Lewiston, William M. Finn, Asst. Gen. Counsel, Central Maine Power Co., Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

PER CURIAM.

This is an appeal by the plaintiffs from an order of a Justice of the Superior Court mandating judgment for the defendant based on the report of a Referee.

The plaintiffs' action, as finally amended, sought to enjoin the defendant from its current and proposed utilization of a pole line easement which was originally acquired in 1927 and which crosses the plaintiffs' real estate. Although equitable relief was sought, the case was referred[1] by agreement, the order thereon reserving the right to object to the allowance of the Referee's report. Rule 53, M.R.Civ.P. This right was seasonably exercised but the report nonetheless was accepted and judgment entered accordingly, thus generating this appeal, which we deny.

We have read the record carefully. The Referee correctly recited the facts therein disclosed and applied appropriate legal conclusions thereto. His report, which we now quote in all essential parts, is adopted as the opinion of this Court:

"The plaintiffs seek an injunction to prohibit the defendant from replacement of its poles, in the defendant's words, or construction of a new line, in plaintiffs' view, on the right of way across plaintiffs' land, and also, to quote plaintiffs' brief, 'from driving its equipment beyond the bounds of the existing easement and from spraying on plaintiffs' land.'

---

1. *See Adams v. Alley*, Me., 340 A.2d 201, 205 (1975).

The decisive issue is whether the defendant's proposed replacement or maintenance program will extend defendant's use beyond the rights acquired in the 1927 easement.

.     .     .     .     .

.  .  .  [O]nly injunctive relief is sought in the case before me.

The defendant holds an easement granted in 1927 as follows:  ·

'.  .  .  the right to set and maintain over and across my land  .  .  .  fourteen poles together with fixtures and wires connecting, to convey currents of electricity, and the right to attach wires and appliances for guying from said poles, where necessary, to or into my land.  .  .  .

'.  .  .  the right to enter upon said land for the purpose of making the necessary repairs to said poles or wires and for the purpose of trimming and cutting such tree or trees as may be necessary to keep the wires of said company free from interference by said tree or trees.  .  .  .

'.  .  .  and with the further understanding that in case it becomes necessary for said company to set additional poles on my land, in the same line as those now staked out, the right to set said additional poles is hereby granted, said company to pay for the same at the rate of twelve dollars and fifty cents per pole.'

Since 1927, the defendant has erected and maintained 14 poles on the right of way. The width of the right of way, not determined in the deed, by consent and acquiescence, has been about 75' or 37½' from a center line marked by the poles. It appears that trees and overhanging branches have been cleared in a wooded area about 700' in length and varying in width as appears on a plan and table of measurements. The transmission line has carried 115 kilovolts since 1927. The right of way at one point is located within 300' of an inhabited building. The line apart from the wooded area appears to cross fields or pasture land.

Until the erection of certain new poles to replace existing poles a few years ago, the width of the way and its use was not questioned by the owners of the plaintiffs' land.

The defendant proposes to replace all poles as part of a long-term maintenance project. The existing poles, in position for nearly fifty years are of an old untreated variety and in a deteriorated condition.

Further, the defendant proposes that when the line is completed, (1) that the transmission line will carry 115 kilovolts as at present; (2) that the center line of the poles will be in the same position as the 1927 line, (except for a slight deviation at one end of defendant's land as shown on the plan); (3) that there will be one extra pole for which defendant will pay $12.50 under the 1927 deed; (4) that the transmission wires will be somewhat heavier; (5) that two aerial ground wires will be carried on the poles; (6) that the replacement poles will be longer than the 1927 poles.

In my opinion, the plaintiffs are not entitled to injunctive relief.

■ *First*: The plaintiffs urge that the proposed line will violate 35 M.R.S.A. Sec. 2306 and 35 M.R.S.A. Sec. 51 and therefore an injunction should issue. With this view I am unable to agree.

35 M.R.S.A. Sec. 2306 grants rights of eminent domain under certain circumstances to a company such as the defendant. Plainly the statute has no bearing on rights acquired by deed as here. The statute becomes operative only in the case of a taking or attempted taking by eminent domain. *In re Bangor Hydroelectric Company*, 314 A.2d 800 (Me.1974) in my view is not applicable.

■ 35 M.R.S.A. Sec. 51 provides that 'Every public utility is required to furnish safe, reasonable and adequate facilities.' The plaintiffs urge that the transmission line at present, and indeed as used since 1927, violates the statutory standard and thus should be enjoined in the future. It is not entirely clear to what extent the plaintiffs have based their claim to injunctive relief on this statute.

The plaintiffs rely heavily on the evidence of the manager of production opera-

tions of the defendant company, who said in part:

'Q And, if you were going to build this particular line or a line similar to this particular line in another location, you would feel that the 150–foot wide strip easement would be necessary?

A We would want rights in a new location to clear trees and wooded growth that might become hazardous to the line for a strip 150 feet wide, 75 feet either side of the line for transmission.

Q And, that would be necessary in that case?

A Yes.'

The evidence of what the company would seek or require for a new location, does not, in my opinion, establish that the present line, either at present or as it is proposed to be rebuilt on the existing way, would violate the statute.

The purpose of this litigation is to determine the rights of the plaintiffs and the defendant under the 1927 easement. The purpose is not to determine whether the defendant is violating, or may violate, Section 51.

■ Second : The defendant in carrying out its maintenance program is and will be acting, in my view, within the rights acquired under the 1927 easement. The maintenance program fairly comes within the 'maintain' provision of the deed.

Poles deteriorate and must be replaced. The burden on plaintiffs' land will not be significantly increased by the new and longer poles, the addition of aerial ground wires, the increase in weight of the power lines, or increase, if any, in use of guy wires.

The proposed change in the line of poles for a short distance, seems to me insignificant.

The right of way remains under the proposed maintenance program, without shift or change, measured from the center line of the 1927 right of way, that is, from the pole line. The width of approximately 75' was fixed in 1927, by consent and acquiescence.

Whether the proposed maintenance program, with its new poles, is characterized as replacement, reconstruction or construction, rebuilding, or whatever, it all comes in the end to maintenance of the pole line at the same location, that is to say the maintenance of the original pole line.

The fact that the defendant made use of a 1959 'Transmission Rebuild Study for 115 KV Transmission Lines of Central Maine Power Company' does not signify to me that the defendant thereby admitted that it was in a legal sense building a new pole line and not maintaining the original line.

In the construction of the 1927 easement, the expressed intention of the parties in the light of conditions and considerations then existing, controls the nature and extent of the grant. The enjoyment of the right is confined to the extent of the legitimate meaning of the grant. The grantee of an easement has the right to take any action reasonably necessary to insure enjoyment of the right.

These basic principles are discussed in *Dana v. Smith*, 117 Me. 198, 103 A. 157; *Reed v. A. C. McLoon & Co.*, 311 A.2d 548 (Me.1973); *Drummond v. Foster*, 107 Me. 401, 78 A. 470; *Ring v. Walker*, 87 Me. 550; *Chandler v. Goodridge*, 23 Me. 78; *Willband v. Knox County Grain Co.*, 128 Me. 62, 145 A. 405.

The plaintiffs, in my view, are not entitled to injunctive relief against the driving of equipment over their land beyond the bounds of the existing easement and from spraying the land.

The right to cut bushes is not questioned. It was not shown that there has been any damage which will result from the spraying. . . .

Plaintiffs' Exhibit 9, the form of transmission line easement presently used by the defendant, is excluded from evidence on objection of the defendant. The statements of rights and conditions in 1975 are not relevant in interpreting the 1927 grant.

Accordingly, in my view, the defendant is entitled to judgment as follows:

Judgment for defendant. Injunction denied.

We agree. The entry is:

Appeal denied.

Judgment affirmed.

POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ., and DUFRESNE, A. R. J., concurring.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.