BANG *v.* FORMAN.

1. Easements—Right is Appurtenant to Land Granted With Right of Easement—No Additional Burden May be Created.
    Where land is granted with a right of way over other lands, the right is appurtenant to every part of land so granted, and the grantee of any part, no matter how small, is entitled to it, provided no additional burden is thereby created upon the servient estate, and this right will pass to a grantee of the dominant estate, or any subdivision thereof, as appurtenant to it, although the easement is not mentioned in the grant, and it is not really necessary to the enjoyment of the estate by the grantee.

2. Injunction—Easements—Additional Burden May be Restrained.
    Where the owners of land bordering on Lake Huron divided it into large lots with restrictions, creating a high-class summer resort, and dedicated the beach front to the sole and only use of the lot owners, a proposed plan to resubdivide three of the lots into 26 smaller ones, granting beach privileges to each purchaser thereof, and opening the beach to the public, would place an additional burden on the servient estate which owners of original lots are entitled to restrain.

Appeal from St. Clair; Law (Eugene F.), J. Submitted June 19, 1928. (Docket No. 67, Calendar No. 33,824.) Decided December 4, 1928.

Bill by George A. Bang and others against Richard C. Forman and others to restrain the resubdividing of certain lots. From a decree for plaintiffs, defendants appeal. Affirmed.

*Walsh, Walsh & O'Sullivan,* for plaintiffs.

*Patrick H. Kane, J. F. Wilson,* and *Isaac S. Hughes,* for defendants.

McDonald, J. The purpose of this suit was to restrain the defendants from resubdividing into

smaller lots a portion of what is known as Shady Shore plat, a recorded plat bordering on the shore of Lake Huron, from selling the smaller lots with an easement in the beach, and from constructing and using a certain roadway through the lots. Shady Shore plat is divided into 27 lots, of which 25 have a 50-foot front on the beach and extend back to a public highway, a distance of 500 or 600 feet. Two of the lots are narrower. The land comprising the plat is described as "the most beautiful of all Port Huron's beautiful beaches." It is covered with a magnificent growth of virgin timber. It borders on an excellent bathing and boating beach, and is in every sense suitable for high-class summer homes. It was intended by the platters for such use. There is no roadway through the plat by which the public can gain access to the beach. It was the intention that the beach should be exclusively for the use and quiet enjoyment of the lot owners. The beach front is about 80 feet in width, and was dedicated to the use of lot owners in language as follows:

"The street, as shown on said plat, is hereby dedicated to the use of the public and the walks and beach front to the sole and only use of the lot owners."

All of the deeds to lot owners contained the following restriction:

"The said lot to be used for dwelling purposes only and no dwelling or obstruction shall be erected on said lots closer than 75 feet from the east line thereof and any dwelling house erected thereon shall not be of less value than $1,500."

The plaintiffs are owners of several of the lots which they have improved and beautified by landscaping and on which they have built expensive homes.

The defendants acquired title to lots 4, 5, and 6 of the plat and proceeded to resubdivide them into 26 small lots. Their plat, which they called "Shady Court subdivision," shows a 14-foot cement roadway extending from the beach to the main highway on the west. Some of the lots of this subdivision have been sold on contract with "beach privileges to all owners." Regardless of objections from the plaintiffs, the defendants continued with their plan until restrained by injunction of the court.

The theory of the bill is that the plan of the Shady Court subdivision violates the restrictions contained in the several deeds, in that it provides for the building of more than one residence on each of the original lots and provides for a roadway through the property; that the dedication of the use of the beach front to the lot owners of Shady Shore plat limits the use of the easement thereby created to such lot owners, and that persons owning a part of a lot are not entitled to the benefit of the easement; and that by their plan in multiplying the number of lot owners who are to use the beach front, the defendants are placing an additional and extra burden on the beach easement against the objections of other owners of the dominant estate.

The controlling question involved in this issue is whether the acts complained of increase the burden on the servient estate beyond that contemplated at the time the easement was created. This is a question of fact. 9 R. C. L. p. 790; *Harvey* v. *Crane*, 85 Mich. 316 (12 L. R. A. 601).

The rule of law governing the relative rights of the parties is correctly stated in *Henrie* v. *Johnson*, 28 W. Va. 190, as follows:

"The law seems to be well settled, that where land is granted with a right of way over other lands, the

right is appurtenant to every part of land so granted, and the grantee of any part, no matter how small, is entitled to it, provided no additional burden is thereby created upon the servient estate. And this right will pass to a grantee of the dominant estate, or any subdivision thereof, as appurtenant to it, although the easement is not mentioned in the grant, and it is not really necessary to the enjoyment of the estate by the grantee."

See, also, 19 C. J. p. 948, and 9 R. C. L. p. 790.

In *Brossart* v. *Corlett*, 27 Iowa, 288, it is said:

"The rule, we grant, is that an easement appurtenant to an estate is so to every part thereof, whatever the subdivision at the time or subsequently. But it is just as true that the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement."

In the instant case, that portion of the dominant estate which is now owned by the defendants has been changed since the easement was created. The change has resulted in imposing upon the easement the burden of serving a larger number of people. By subdividing three lots of the original plat into 26 small lots and granting beach privileges to each, the defendants have materially increased the burden upon the servient estate. They have provided for 26 families with the privilege of using the easement where originally there were but three. They have built a 14-foot cement driveway from the main highway to the beach and at the gateway leading from the highway have placed a sign which says, "Welcome, drive in." The manner in which the public responded is described by plaintiff Bang, who testified:

"At various times, late in the evening, we can

hear the shrieking and hollering of bathers, especially in the fall of the year; I have noticed a number of cottages there are rented out on short period of a few days to a week, and so on, and they bring out crowds that are very undesirable. Within the last week I have noticed what has been going on nights in Shady Court plat; last evening, about 11 o'clock, I woke up and heard a woman squawking and hollering, 'let go my toes; let go my toes.' We found cars in there a number of times; we would find they would drive in there in the evening, couples, in the dark, and later on they would turn on their lights when they would turn to go out and throw the lights over to our place, which is very annoying, and it is surely not the class of people we would like around there anyway.''

With this and other like testimony before him, the trial court found that the acts complained of resulted in an unreasonable use of the easement in question. In his opinion, he said:

''I find that the Shady Court plan will of necessity increase the burden upon this easement and cast an additional and extra burden upon it. This Shady Court plan, if carried out, will decrease the value of every other lot in Shady Shore plat for the purpose for which the lot was sold. It will decrease the value and desirability of the fine properties of plaintiffs Bang and Bishop. Property does not consist merely in the right to the soil but in the right as well to its beneficial enjoyment. *Horton* v. *Williams,* 99 Mich. 423; *Scott* v. *Moore,* 81 Am. St. Rep. 749 (98 Va. 668, 37 S. E. 342); *Talbert* v. *Mason,* 14 L. R. A. (N. S.) 878 (136 Iowa, 373, 113 N. W. 918). Shady Court subdivision, if the plan is completed, will tend to deprive plaintiffs and other lot owners in Shady Shore plat of this right. It is subversive of rights in Shady Shore plat, particularly of the rights of those who have made expensive improvements on their property.'' ,

The extent to which the use of the easement had been increased was a question of fact for the court. Our examination of the record convinces us that he reached a correct conclusion in finding that there had been a substantial increase.

The additional burden imposed upon the servient estate was not contemplated by the owner when he created the easement. It was not what the grantor intended. He had a purpose in dividing the plat into large lots. He worked from a general plan and this plan did not contemplate a subdivision of the large lots into smaller ones. He advertised the fact that the lots were large, each with 50 feet front on the beach and extending back from 500 to 600 feet to the main highway. He advertised that each deed would contain a provision dedicating the beach front to the "common use of all lot owners," and that the beach was "neither too wide or too narrow but just right." The language of the grant, considered in connection with statements in these circulars and the physical facts and circumstances existing at the time, clearly shows that the grantor did not intend such use of the easement as is proposed by the defendants.

It is not necessary to discuss other questions. As a basis for his decree, the circuit judge filed an opinion in which he carefully considered all of the issues and correctly disposed of them.

The decree entered is affirmed, with costs to the plaintiffs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.