THOMAS GUARD AND RUTH RICHARDSON GUARD *v.* CLARENCE YOSHINORI SHIMAMURA, JOAN CHIENO SHIMAMURA, STATE SAVINGS AND LOAN ASSOCIATION, SYLVESTER MICHAEL SONOGNINI, JR., AND JOSEPHINE KILANI SONOGNINI.

No. 2594.

ARGUED OCTOBER 17, 18, NOVEMBER 5, 1945.

DECIDED NOVEMBER 30, 1945.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a bill in equity for injunctive relief.

Separate demurrers by each of the respondents were sustained to both the original and amended petitions and petitioners declining to further amend the suit was dismissed. Hence this appeal.

The gravamen of the amended bill is that the respondent Shimamura subdivided registered land within the City and County of Honolulu for the sale or other disposition of lots included in the subdivision for residential purposes and secured the approval of the land court of the Territory of a plan and an amended plan of the subdivision and sold and otherwise disposed of lots therein for residential purposes without first complying with the requirements of existing laws regulating subdivisions for that purpose within the City and County of Honolulu, by reason of which, among other things, the subdivision should be abated; that in the absence of any road in and to the subdivision constructed in conformity to law and failing the construction by the subdivider of any road in and to the subdivision according to law, the subdivider, his grantees, lessees, tenants and agents were using the only existing available means of access to the lots in the subdivision intended for residence purposes, to wit: an

272

adjoining private 10-foot right of way as a means of ingress and egress to and from the lots in the subdivision and to and from the nearest public street, thereby imposing upon the said right of way, the use of which was restricted to the subdivider, the petitioners and four other persons, an undue burden amounting to a nuisance, and incidentally trespassing upon premises of petitioners adjoining said right of way, the apprehended repetition of which, unless restrained, would occasion petitioners irreparable injury.

The only question we deem necessary to consider is the general one of the sufficiency of the amended petition to entitle petitioners to any equitable relief. The grounds of demurrer were both general and special. If the former were well taken it would have served no useful purpose for petitioners to amend to meet the objections of the latter. Having held the amended petition bad on general demurrer, the court necessarily would have dismissed it despite proper amendments meeting the objections of special demurrer.[1] Moreover, where a general demurrer has been sustained, a decree of dismissal will be reversed if the bill is sufficient in any one particular without inquiry of the sufficiency of the bill in other particulars.[2]

The legality of the approval by the land court of the projected subdivision effected by Shimamura has already been disposed of adversely to the petitioners. (See *ante*.) Moreover, holding as we do that petitioners are entitled to some relief, we expressly refrain from determining whether or not petitioners have, by the allegations of the amended petition, shown any litigable interest entitling them to injunctive relief against past and apprehended future violations by the respondent Shimamura of the existing provisions of law regulating the subdivision of

[1] DeEverett v. Henry, 67 Tex. 402, 3 S. W. 566, 568.
[2] Leach v. Weaver, 89 W. Va. 49, 108 S. E. 494.

lands for residential purposes within the City and County of Honolulu. But the amended petition does disclose a title and interest in the petitioners in the right of way and the use to which the same and the land of petitioners immediately adjoining are subjected by the respondent Shimamura, his grantees, lessees, tenants and agents, both past and apprehended, entitling them to injunctive relief in equity.

Briefly, the salient facts alleged in the amended petition sustaining the title and interest of the petitioners in the subject matter of the right of way and their right to equitable relief in respect thereto are as follows:

(a) Ownership in fee by petitioners as joint tenants and by the respondent in severalty of adjoining registered lands on the northeast side of Nuuanu Avenue in the City and County of Honolulu, the transfer certificates of title to which, issued by the land court, were numbers 8477, dated July 17, 1929, and 21061, dated December 16, 1939, respectively;

(b) The existence for many years past of a right of way approximately 10 feet wide, the middle line of which is the common boundary of the adjoining premises owned by the petitioners and the respondent Shimamura, and intersecting the northeast side of Nuuanu Avenue, the respective rights of petitioners and of the respondent Shimamura in and to which are reflected by transfer certificates of title numbers 8477 and 21061, respectively;

(c) The following recitation contained in the certificate of title number 8477, after the confirmation in the petitioners of their ownership in fee simple of the land registered, "subject, however, to a perpetual right of way to Julia Nahale, Julia Kalakiela, F. Dickson Nott, their respective heirs and assigns in common with Thomas Guard and Ruth Richardson Guard and the survivor and his or her heirs and assigns, for a roadway over, upon

274

and along the following described strip of land 5 feet wide * * * " (here follows the area of the strip, the net area remaining of the land registered, and the description by metes and bounds of the strip of land 5 feet wide included in the right of way, the fee in which was registered in the petitioners), and the further recitation contained therein, "together with the additional right and easement in said Thomas Guard and Ruth Richardson Guard and the survivor and his or her successors and assigns, to wit: a right of way in common with Julia Nahale, Julia Kalakiela, F. Dickson Nott, over, upon and along the following described strip of land 5 feet wide * * *" (here follows a description of the strip of land 5 feet wide included in the right of way, the fee in which was registered in the respondent Shimamura) ;

(d) The following recitation contained in the certificate of title number 21061, after the confirmation in the respondent Shimamura of his ownership in fee simple of the land registered, "together with the following additional right and easement in Clarence Yoshinori Shimamura, his heirs and assigns to wit: a right of way in common with Julia Nahale, Julia Kalakiela, F. Dickson Nott, Helen Strong Carter (the immediate predecessor in interest of petitioners) and Frederick A. Schaefer over, upon and along the following described strip of land 5 feet wide * * *" (here follows a description of the strip of land 5 feet wide included in the right of way, the fee in which was registered in the petitioners) and the recitation following the notation of encumbrances "subject also to a perpetual right of way to Julia Nahale, Julia Kalakiela, F. Dickson Nott, Helen Strong Carter and Frederick A. Schaefer, their respective heirs and assigns, in common with said Clarence Yoshinori Shimamura, his heirs and assigns for a roadway over, upon and along the following

described strip of land 5 feet wide * * *" (here follows the area of the strip and a description by metes and bounds of the strip of land 5 feet wide included in the right of way, the fee in which was registered in the respondent Shimamura) ;

(e) The subdivision by respondent prior to June 6, 1940, of the land registered in him by transfer certificate of title number 21061 and the approval of a plan and of an amended plan thereof by the land court by subdivision orders dated June 6, 1940, and September 16, 1940, respectively, subdividing the property as follows: the land, exclusive of the strip 5 feet wide included in the right of way, was divided into two rectangular lots by a line drawn approximately parallel to Nuuanu Avenue, the lot fronting on Nuuanu Avenue (lot No. 7) containing an area of 45,026.8 square feet and the lot to the rear 41,966 square feet. The rear lot was again divided into three lots rectangular in shape and of approximately equal area, each fronting on the right of way, and each of these three lots was again divided into two lots, one lot being L-shaped, the other rectangular and included in the lines of the L, and both fronting on the right of way. The L-shaped lots are numbered 5-a, 3-a and 1-a in the order of their relation to Nuuanu Avenue, and the rectangular lots included in the L-shaped lots are numbered 5-b, 3-b and 1-b in the same order. The strip 5 feet wide included in the right of way, the fee in which was vested in the respondent Shimamura, opposite the six lots thus created in the rear, was also divided into six lots with frontages corresponding to the lots to which they were adjacent. These lots are numbered in the same order, 6-b, 6-a, 4-b, 4-a, 2-b and 2-a. The remainder of the strip, 5 feet wide included in the right of way, was numbered lot 8;

(f) The sale in February, 1942, by Shimamura to

the respondents Sonognini, Jr., and wife, for residence purposes of lots 3-b and 4-a, a right of way over lots 6-b, 6-a, 4-b, 2-b and 2-a and an undivided one-seventh interest in lot 8;

(g) Upon and since November 11, 1943, the erection by Shimamura of four houses for residence purposes on four of the remaining five lots, into which the rear had been divided for residential purposes, and their occupation by lessees and tenants of the said Shimamura;

(h) Irreparable injury suffered and apprehended by the increased burden imposed and to be imposed upon the right of way, resulting in congestion, increased danger and liability of accident to those entitled to use the same;

(i) Trespass by respondent Shimamura, his grantees Sonognini, Jr., and wife, and the agents and servants of the former, incidental to the misuse of the right of way over and upon the premises of the petitioners immediately adjoining the 10-foot right of way.

From the recitations quoted from transfer certificates of title numbers 8477 and 21061, it is apparent that there was thereby vested in each certificate holder an easement in the strip 5 feet wide included in the right of way belonging to the adjoining owner to be enjoyed in common with the latter and other persons named, and that the easement constituted a corresponding encumbrance upon the lands affected thereby. It is true that in certificate number 8477 Shimamura's name is not included as one of the persons for whose benefit the encumbrance existed. And from this the petitioners argue that the easement to which their land is subject may not be enjoyed by Shimamura in common with them and the other persons named; in other words, that Shimamura and his lessees, tenants and agents in their use of the same are trespassers.

Transfer certificate of title number 8477 does note the

encumbrance. Its deficiency, if any, is in its failure to include Shimamura among the persons named therein as entitled to use the same. The record of the land court, however, is not before us. We are not advised of the contents of the decree of registration or of the intermediate certificates of title preceding transfer certificate of title number 8477. The amended petition does not refer to them in any way. It is silent upon the subject further than to allege the absence of Shimamura's name. On the other hand, transfer certificate of title number 21061 issued to Shimamura, confirms an easement in him in common with the other persons named in the easement noted as an encumbrance in certificate number 8477. These facts give rise to the inference, adverse to the pleader, that certificate of title number 8477 is defective and were it to conform to the original decree, the terms of which run with the land (R. L. H. 1935, §§ 5037, 5045) and with intermediate certificates of title following decree and preceding certificate of title number 8477, it should include Shimamura's name in the names of persons entitled to use the easement. Revised Laws of Hawaii 1935, section 5041, extends exemption from encumbrances not noted in the certificate only to certificate holders who take the same for value and in good faith. The adverse inference of which the amended petition is capable negatives good faith. Hence, Shimamura's interest in the 5-foot strip included in the right of way and noted as an encumbrance in certificate number 8477 must be considered upon demurer as coextensive with the easement granted him therein by certificate number 21061.

It is argued that the 10-foot right of way is an easement appurtenant to Shimamura's land and that the rule applies that "if a way is appurtenant to a parcel of land, a part of which is granted to another, the right of way will exist in each of the parts into which the original

estate is divided."[3]   On the other hand, it is argued that
the easement confirmed in Shimamura in the strip 5 feet
wide over and along the land of which the petitioners are
the owners in fee is one in gross or a right in the nature
of *profit a prendre* and that the easement is personal to
him.   We do not deem it expedient or necessary to deter-
mine the estate in the easement vested in the respondent
Shimamura.   The only muniments of title before us are
the two transfer certificates of title, *viz.*, numbers 8477
and 21061.   The source of the interests of the persons
entitled to use the right of way, in addition to and in
common with the respondent Shimamura and the peti-
tioners, is not before us.   Nor are they parties to the
within suit.   We are not informed of the facts and cir-
cumstances existing at the time the easement was created.

Assuming, however, but not deciding, that the ease-
ment over the strip 5 feet wide included in the right of
way, the fee of which is in the petitioners, is an easement
appurtenant to the land described in transfer certificate
of title number 21061, it does not necessarily follow that
the burden upon the servient estate made by grants to
others of parts of the dominant estate into which the latter
has been divided may be thereby increased beyond the
right originally intended to be granted.   Professor Wash-
burn, following the excerpt hereinbefore quoted, has this
to say in that regard:   "But though the doctrine is thus
generally laid down, it is to be taken with the limitation,
that the burden upon the servient estate is not thereby
increased beyond the right originally intended to be
granted.   Thus, if A were to grant a small parcel of land
forming a part of the cultivated field to B for the purposes
of a yard to his house, and should reserve a way across
the same from the highway to his field, he would not be

---

3 2 Washburn, Real Property § 1234, p. 279.

at liberty to sell his field into houselots, and thereby build up a village, and give to each purchaser a free right of way through B's yard."[4]

But whatever intentions accompanied the grants by which the easements in the instant case were originally created, the rights of the persons entitled to use the same were, in respect to future subdivisions of lands to which the easements were respectively appurtenant, abrogated by the municipal ordinance regulating the subdivision of lands in the City and County of Honolulu for other than agricultural purposes to the extent that they were inconsistent with the provisions of the ordinance.[5]

In February, 1942, and at the time that lots 3-b and 4-a, included in the subdivision, were sold by the respondent Shimamura to the respondent Sonognini, Jr., and wife, and since and including the time upon and after November 11, 1943, when the respondent Shimamura was erecting four houses for residence purposes on four of the remaining five lots into which the rear had been divided for residential purposes, and during their occupation by lessees and tenants of the said Shimamura, there was in full force and effect an ordinance of the City and County of Honolulu known as ordinance number 865, regulating the subdivision of land within the City and County of Honolulu. By section 1, paragraph (a) the word "subdivision" is defined as "any division of a parcel of land into smaller parcels in order to sell, lease or rent any of such parcels for all, except agricultural, purposes." By section III of said ordinance the procedure is prescribed for the approval by the city planning commission and recordation of subdivisions. By the first paragraph of section III it is provided that "Before any subdivider or

---

4 See also 2 Washburn, Real Property §§ 1240, 1269.

5 Jannarone v. Board of Adjustment of Town of Nutley, 9 N. J. Misc. 210, 153 Atl. 256.

his agent sells, leases or rents any subdivision of land or any part thereof, which is laid out wholly or partly within the City and County of Honolulu, the subdivider or his agent shall secure the approval of the City Planning Commission on such subdivision." Such approval was neither sought nor obtained by Shimamura. By paragraph (f) of the same section it is also provided, subject to exceptions which are immaterial to our consideration: "Land shall not be offered for sale, lease or rent until after recordation of the approved subdivision map * * *." Contrary to this prohibition, Shimamura has sold lots included in the subdivision, and lessees and tenants of the said Shimamura occupy residences erected by him therein. By section VII of the ordinance are set up the requirements and standards of subdivision, and by paragraph (b) of said section it is provided: "There shall be no reserve strips controlling access to streets, either existing or proposed, except where the control of such strips is definitely placed in the jurisdiction of the city and county. The subdividing of the land shall be such as to provide each lot, by means of either a public street or easement, of approved width, with satisfactory access to an existing public street as shown on an official map." By paragraph (c) of the same section the minimum width of the main thoroughfares and streets are prescribed, the details of which are quoted in the margin.[6] Finally, by section XIV of said ordinance violation of any of the

6 "Street Widths. The minimum width of main thoroughfares and streets shall conform to the following requirements:

"Main Thoroughfares—right-of-way: 100 feet; roadway: 64 feet;

"Secondary Thoroughfares—right-of-way: 80 feet; roadway: 64 feet;

"Major Streets—right-of-way: 60 feet; roadway: 40 feet;

"Minor Streets—right-of-way: 40 feet; roadway: 26 feet

"Dead-end (cul de sac) Streets—right-of-way: 30 feet; roadway: 18 feet.

"As used in this Ordinance:

provisions thereof is made a misdemeanor, punishable upon conviction by a fine of not more than $1000, or imprisonment for not more than one year, or both.

The constitutionality of ordinance number 865 has not been challenged. The only objection made by the respondent Shimamura is that it is not applicable; that the ordinance refers to roads to be thereafter constructed and that no road has been constructed by him. The argument is specious and does not merit serious consideration. The approval by the land court of the subdivision plan did not exempt Shimamura from compliance with applicable municipal ordinances regulating subdivisions. Shimamura adopted the 10-foot right of way as a means, and the only means, of access to and from the rear lots included in the subdivision, and to and from Nuuanu Avenue. His position is no different than had he constructed a road 10 feet wide as a means of such access. The right of way is a private way and has not been placed in the jurisdiction of the city and county. Its width is less than the minimum width of main thoroughfares and streets of any of the classes of thoroughfares and streets into which, by section VII, paragraph (c), thoroughfares and streets in the city and county have been divided. He has failed to

---

"A MAIN THOROUGHFARE or BOULEVARD shall mean a traffic artery 100 feet or more in width connecting various sections of the city.

"A SECONDARY THOROUGHFARE shall mean a traffic artery 80 feet or more but not more than 100 feet, in width, connecting various sections within the city.

"A MAJOR STREET shall mean any highway 60 feet or more in width not coming under the definition of a Main Thoroughfare or a Secondary Thoroughfare.

"A MINOR STREET shall mean any street not coming under the definition of a Main Thoroughfare, a Secondary Thoroughfare, or a Major Street.

"DEAD-END (CUL-DE-SAC) streets shall mean streets designed to have one end permanently closed, having a turning area at the closed end with a diameter of not less than sixty (60) feet."

provide each lot, by means of either a public street or easement of approved width, with satisfactory access to Nuuanu Avenue, with the result that there is now imposed upon the right of way an additional burden in excess of that contemplated by the ordinance. And to the extent that the situation complained of is the proximate result of his failure to provide each lot, by means of a public street or easement of approved width with satisfactory access to Nuuanu Avenue, the same constitutes a misuse 'of the easements.

From the allegations of the amended petition, it is clear that Shimamura's failure to comply with the city and county ordinance in respect to access to the six lots into which the rear. of his premises had been subdivided is the proximate cause of the misuse of the right of way complained of.

Petitioners, both as owners of the servient estate to which the strip 5 feet wide included in the right of way is subject as an encumbrance and as persons entitled to use the right of way in common with the respondent Shimamura and the other persons named in transfer certificates of title numbers 8477 and 21061, have a special interest in the right of way, the misuse of which causes and will cause them special damages peculiar to themselves and not suffered by the public generally. No legal right is in controversy requiring resort to the law side of the court. Any legal remedy that might be invoked would prove inadequate. To prevent further similar misuse 'of the right of way equity affords relief.[7]

Decree reversed, and the cause remanded for further proceedings consistent herewith.

---

[7] Stokes v. Jenkins, 107 N. J. Eq. 318, 152 Atl. 383; Pritz v. Messer, 112 Ohio 628, 149 N. E. 30; Bang v. Forman, 244 Mich. 571, 222 N. W. 96; Man v. Vockroth, 94 N. J. Eq. 511, 121 Atl. 599.

*H. Edmondson (Smith, Wild, Beebe & Cades* also on the briefs) for petitioners-appellants.

*C. Y. Shimamura* (also on the brief) for Clarence Yoshinori Shimamura and Joan Chieno Shimamura, respondents-appellees.

*R. L. Forbes (Robertson, Castle & Anthony* also on the brief) for State Savings & Loan Association, respondents-appellees.

*R. T. Yamaguchi* (also on the brief) for Sylvester Michael Sonognini, Jr., and Josephine Kilani Sonognini, respondents-appellees.