LILLIAN L. WOODS, Appellant, *v.* ELMER P. BROMLEY, Executor of the Estate of Leland M. Woods, Deceased, Respondent.

No. 3672

March 20, 1952.                    241 P.2d 1103.

*George E. Marshall,* of Las Vegas, and *C. Mert Reese,* of Denver, Colorado, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, and *Alan G. Ritter,* and *H. E. Lindersmith,* both of Los Angeles, California, for Respondent.

## OPINION

By the Court, BADT, C. J.:

The question here presented is whether a certain written contract entered into between plaintiff's testator and defendant by its terms vested in each of the parties to the contract an undivided one-half interest in the parcel of real estate involved, thus severing the joint tenancy theretofore existing. The learned district judge held that such a severance was effected. Defendant has appealed from the judgment and from the order denying her motion for a new trial. She assigns as error (1) the ruling above recited; (2) the refusal of the court to hold that a certain provision of the contract created a condition precedent, failure of performance whereof precluded plaintiff from the relief sought; (3) the admission in evidence of the written contract; (4) the court's rejection of appellant's contention that the contract is ambiguous in its terms and should have been construed in the light of the deceased's expressed intention not to be governed by it; (5) the court's rejection of the defendant's theory that plaintiff was estopped

by his testator's actions from claiming that a severance had been effected; and (6) the court's rejection of defendant's contention that plaintiff's relief, if any, was in equity and not by way of a complaint for a declaratory judgment.

Plaintiff's testator Leland M. Woods and defendant Lillian L. Woods, husband and wife, during the pendency of a divorce action in Los Angeles County, California, entered into a "Property Settlement Agreement" under date of September 15, 1948. This recited, by way of preamble, the marriage relationship; the existence of a minor child (the daughter of the wife by a former marriage who was thereafter adopted by the husband); the fact that the parties had been living separate and apart for a long period of time; the representation of both parties by their respective counsel; the contention of the wife that various properties constituted community property of the parties as against the husband's contention that a substantial part was his separate property; a prior agreement whereunder the wife had permitted the husband to sell certain parcels of property for $25,250 upon his conveyance to her as her sole and separate property of certain other parcels; a recital that "it is contemplated and intended by this Property Settlement Agreement that First Party [the wife] shall have and retain as her sole and separate property" six listed items of real and personal property; a similar recital that the husband shall have six other listed items; that the sum of $80,000 to be paid to the wife is by way of property division and settlement and not by way of alimony and is to be free of tax; that the husband will protect the Las Vegas property (involved in this proceeding) until it is free of debt; that the wife will be protected against any income tax liability, that it is contemplated that neither party will sell or encumber his respective interest in the Las Vegas property until the $80,000 has been fully paid to the wife; that the minor daughter is to be provided for by the husband, that counsel for the respective parties "have fully and

explicitly explained to them, and each of them understands" that the agreement constitutes a property settlement and division, and that neither of the parties "have, or ever will have, any right to modify or alter this agreement," etc., etc.

The body of the agreement carries into effect all of the matters thus recited by way of preamble. The entire agreement, comprising 18 typewritten pages in addition to 2 pages devoted to a description of 14 items of real and personal property involved in the settlement, is too long to discuss in detail, nor is such discussion necessary. Provision Second reads as follows:

"It is further understood and agreed by and between the parties hereto that the Las Vegas property (Item No. 9 on said 'Exhibit A'), shall be divided equally between the First Party and the Second Party and that an undivided one-half interest therein shall be vested in each of said parties as his or her separate property, respectively.

"In the foregoing connection the parties hereto further agree that the said Las Vegas property is now held by them in joint tenancy and that it is the intent of the parties under this Agreement, and they hereby agree to vest title in themselves as tenants in common so that each of them will hold title to an undivided one-half interest as his or her sole and separate property, respectively."

Paragraph Eighth provides for the payment by the husband to the wife of $80,000, and by Paragraph Tenth the husband agrees to execute a promissary note and trust deed covering "his undivided one-half interest" in the Las Vegas property, being the property involved in this action. Paragraph Twenty-Second canceled and abrogated an earlier property settlement agreement executed in 1944. Paragraph Twenty-Fourth provided "that any property, real or personal, and any amount of money to be transferred or conveyed to First Party under this agreement * * * shall be her sole and separate property, free from any right, interest or claim

of Second Party." Paragraph Twenty-Fifth contained a similar provision running in favor of the husband. Paragraph Thirty-First reads as follows:

"Each of the parties hereto for himself and herself, respectively, agrees to execute and deliver forthwith upon request therefor any and all assignments, releases, bills of sale, conveyances, or other documents that may be necessary or proper to effectuate the purposes of any of the foregoing provisions."

Paragraph Thirty-Third recited the understanding and the agreement of the parties that their respective counsel had fully and explicitly explained to them the provisions of the agreement and that each understood the same, and that, except as to provisions concerning the minor child, neither of the parties "have or ever will have, other than by another instrument in writing executed by them for that purpose, any right to modify or alter this agreement. * * *" One original copy of the agreement was recorded in the office of the county recorder of Clark County.

It appears that as to all items of property, except the Las Vegas property, deeds were exchanged in accordance with the terms of the agreement. Although the defendant wife, appellant herein, demanded that this be done with reference to the Las Vegas property, the husband continuously, definitely and positively refused to comply. He died a year and a half later, and the wife claimed that the Las Vegas property became vested in her as a surviving joint tenant. The deceased husband's executor then brought this action.

At the conclusion of the evidence the district judge rendered an oral decision from the bench in which he stated: "The court feels that this agreement definitely granted a tenancy in common when it was executed between the parties. * * *" Thereafter the court signed findings of fact to the effect that by virtue of the agreement the parties agreed that the Las Vegas property should be divided equally between them and that an undivided one-half interest should be vested in each

as his or her separate property, respectively, and that, although at the time of the agreement the property was held by them in joint tenancy, it was their intention as evidenced by the agreement to vest an undivided one-half interest in each.

(1) We see no other possible construction of the agreement. A mere reading of those provisions heretofore quoted or described clearly indicates the intention of the parties to execute an immediate severance of all of the unities attendant upon joint tenancy and the vesting in each of the parties of an undivided one-half interest in the property.

(2) Appellant assigns as error the court's refusal to hold that decedent's failure to request a conveyance was a failure to perform a condition precedent which effectually foreclosed his executor's right to relief. This contention grows from the provisions of Paragraph Thirty-First of the contract quoted in full supra. Emphasis is placed by appellant on the words "upon request." She contends that as her husband never requested a conveyance during his lifetime, no right to such conveyance ever arose, and that upon his death the entire title vested in her as a surviving joint tenant, so that a request by her husband's executor was too late. She insists that at all times the contract remained an executory one whereunder the existing joint tenancy remained such until a conveyance by her, which in turn depended, as a condition precedent, upon a request by her husband. If we could construe the agreement as not in itself vesting the title in common, and if, further, we could construe Provision Thirty-First as creating a condition precedent, there might be some force to appellant's argument. To construe Provision Thirty-First as creating a condition precedent would, in our opinion, be a strained and unwarranted construction.

(3) Plaintiff identified the "Property Settlement Agreement," and it was admitted in evidence over defendant's objection. She earnestly asserts that the admission in evidence of this contract constituted a variance; that plaintiff had simply pleaded the legal effect of Provision Second of the contract as vesting a tenancy in common in the parties, while the agreement itself presented a contract between the parties, executory in nature, whereunder performance by the defendant could not be enforced without proof by the plaintiff that his testator had complied with a condition precedent, namely, a request for the execution by defendant for an appropriate deed. Under our approval of the court's holding that the contract itself vested the title in common and that Provision Thirty-First of the agreement did not create a condition precedent, this assignment necessarily falls. We may note that the defendant did not attack the complaint by general demurrer or for uncertainty, nor did she insist that it should plead the entire contract, whether by its legal effect or in haec verba or by annexing the same as an exhibit. Indeed, defendant in her brief says: "* * * We take the position that the entire property settlement should be viewed with the purpose of construing the said Property Settlement Agreement in the light of the whole thereof, and in the manner in which the parties construed it." Plaintiff's complaint, after pleading the legal effect of Paragraph Second of the agreement, pleaded further that although the property at the time of the agreement was held by the parties in joint tenancy, it was their intent by virtue of the agreement to vest title in themselves as tenants in common so that each would hold an undivided half interest as his or her sole and separate property, respectively; that from the date of the agreement on September 15, 1948, to the date of the death of plaintiff's testator on February 20, 1950, the property remained as of record in the names of the parties as

joint tenants; that a controversy had arisen relating to the respective legal rights in the property; that plaintiff executor claimed an undivided one-half interest and that neither of the parties at the time of the death of the testator had any rights of survivorship by reason of the severance created by the agreement, but that the defendant disputed these contentions and claimed rights of survivorship. Defendant's answer admitted the execution of the agreement, that the property described in the complaint was part of the subject matter thereof, "and admits that under and by virtue of the terms of said property settlement agreement, that the parties agreed that the said real property described in Paragraph III should be divided equally between the parties to said contract, and admits that at the time of making said property settlement agreement on the 15th day of September, 1948, that the division of said property was contemplated between the parties to the end that an undivided one-half interest in and to said property should be vested in each of the parties as his or her separate property, respectively, and admits that said property was at all times theretofore and at the time of the making of said property settlement agreement and is now held in joint tenancy, and admits it was the intent of the parties, Leland M. Woods and Lillian L. Woods, that by virtue of said agreement of September 15, 1948, it was intended that said property should be conveyed so that each of said parties would hold an undivided one-half interest in common as his or her sole and separate property, and denies that by virtue of said agreement that title vested or has ever vested in said property and denies that plaintiff has any interest in or to the same, whatsoever or at all."

There is clearly no merit to the assignment that it was error to admit the agreement in evidence as constituting a variance. N.C.L.1929, sec. 8636.

(4) Appellant's answer had alleged that subsequently to the agreement no steps had been taken to vest the

title in common, that she owned the entire interest as a surviving joint tenant, and that no controversy existed. She called some eight witnesses, all of whom testified, over plaintiff's objection, to statements made by the husband after the execution of the agreement that he had no intention of carrying it out but would continue to consider the property as owned by the parties in joint tenancy. The trial court expressed itself as being of the opinion that a motion to strike all of this testimony should be granted, but felt that no harm would be done by leaving it in the record. Appellant contends that the court gave no weight to this testimony, and such is undoubtedly the case. Appellant asserts that this was error under the familiar rule that the construction given to a contract by the parties should carry great weight. There are two simple answers to this contention. The rule applies only to ambiguous contracts and not to contracts which are clear, certain and definite in their terms. We may accept as a correct statement of the rule appellant's citation of 20 Am.Jur. 998, Evidence, sec. 1144. "Where the language used in a contract is equivocal or ambiguous, subsequent acts or declarations of the parties showing the practical construction put upon the words may be resorted to for the purpose of ascertaining their intention." But appellant concedes that the contract is not "so uncertain or ambiguous that it cannot be intelligibly read." Secondly, the evidence referred to does not come within the category of a construction placed upon a doubtful contract by the parties to it, but amounts simply to statements by one of the parties that he did not intend to be bound by its terms. The assignment is without merit.

(5) It is next contended that because of the deceased's assertions that he would not be bound by the contract vesting the title as a tenancy in common, his executor was estopped from standing upon the agreement as creating such tenancy, and as terminating the prior joint tenancy. But essential elements of an equitable estoppel

or a quasi estoppel are entirely lacking. During the period of 18 months between the execution of the agreement and Leland Woods's death, Lillian Woods repeatedly demanded that the necessary deeds be executed to vest the tenancy in common in accordance with the agreement. Leland Woods consistently refused to comply, and stated that he would not be bound by the agreement. Lillian Woods was not shown to have been in any way prejudiced by Leland Woods's conduct or to have done any single act in reliance upon it or to have changed her position for the worse. The matter simply remained one of contention until Leland Woods died. This court said in Farmers & Merchants National Bank v. Eureka L. & S. Co., 56 Nev. 218, 49 P.2d 354, 357: "* * * before one can successfully urge estoppel he must show that he has been induced by the adverse party to change his position to his detriment." We conclude that the executor was not estopped.

(6) It is next contended that even if plaintiff's complaint presents a cause for equitable relief, it is insufficient as a complaint seeking a declaratory judgment. The first case coming to this court under our declaratory judgment act was Kress v. Corey, 65 Nev. 1, 189 P.2d 352. The greater part of the Nevada uniform declaratory judgments act, N.C.L.1929, sec. 9440 et seq., was there recited in the margin. It will be unnecessary to repeat it here, except to note that section 4 of the act, not recited in the marginal note in Kress v. Corey, provided that a person interested as an executor might have a declaration of rights or legal relations to determine any question arising in the administration, including questions of construction of writings. Powers of courts under the act were recited in section 5 not to be restricted by the special enumerations, in any proceeding where declaratory relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty. N.C.L.1929, sec. 9444. In Kress

v. Corey we aligned ourselves with those courts adopting a broad and liberal concept of the purposes of the declaratory judgments act, and said [65 Nev. 1, 189 P.2d 370]: "It seems clear, in any event, that injunctive relief may properly be coupled with a prayer for a declaratory judgment." Thus it would appear that equitable cognizance of this controversy and the application of the maxim "Equity regards as done what in good conscience ought to be done" do not foreclose plaintiff from seeking a declaratory judgment. It is by no means uncommon for courts to entertain a suit for a declaratory judgment coupled with a prayer for equitable relief. See Borchard, Declaratory Judgments, (2d Ed.) pp. 135, 168, 340. And for an action typical of the nature of the relief sought here, see Cadgene v. Cadgene, 17 N.J. Misc. 332, 8 A.2d 858 (affd. 124 N.J.L. 566, 12 A.2d 635), in which the court construed certain deeds from a husband to himself and wife as constituting them tenants by the entirety to the end that upon the death of the husband his widow became the sole owner.

The judgment and order denying new trial are affirmed with costs.

EATHER and MERRILL, JJ., concur.