**MARTIN et al. v. MUSIC et al.**

Court of Appeals of Kentucky.
Jan. 30, 1953.

Tackett & Tackett and Joe Hobson, Prestonsburg, for appellants.

W. W. Burchett, Prestonsburg, for appellees.

CULLEN, Commissioner.

This action involves the construction of the following agreement:

"This mutual agreement, made and entered into by and between Marvin Music, of Prestonsburg, Kentucky, party of the first part, and Fred Martin, of Prestonsburg, Kentucky, party of the second part.

"Witnesseth: That for and in consideration of the sum of One ($1.00) Dollar, and other considerations hereinafter set out, parties of the first and second part mutually agree:

"Party of the first part gives and grants to second party the right to construct and maintain a sewer line under and through his property located in the Layne Heirs addition to the City of Prestonsburg, Kentucky, in the Garfield Bottom, and being lots Nos. 17 through 24 inc. of said addition.

"In consideration of said right, second party agrees to lay said sewer line at sufficient depth to not interfere with first party's use and enjoyment of said property; and to place an intake connection in said line for use of said party at a point to be designated by him; and further agrees to pay to first party any damage which may

result to his property by reason of the laying, maintaining, repairing and operation of said sewer line.

"Given under our hands, this December 3, 1949."

At the time the agreement was executed, the eight lots owned by Music were unoccupied, except for a garage building used by Music for the vehicles operated by him in his business as a bulk distributor of oil and gasoline. Martin constructed his sewer across the lots, and thereafter Music sold six of the lots to one Moore, who in turn sold three each to the appellees Wells and Allen. Wells and Allen each commenced the construction of a dwelling house on his lots, and prepared to connect with Martin's sewer. Martin then brought this action for a declaration of rights, maintaining that the right to connect with the sewer was personal to Music alone, for the purpose of serving a dwelling house which Music had planned to build, and that the right did not accrue to Wells and Allen. The court adjudged that Music, Wells and Allen each had the right to connect with the sewer, provided that the connection was made through the one intake connection provided for in the written contract. Martin appeals.

Considerable evidence was introduced concerning the circumstances surrounding the execution of the agreement, and the situation that existed at the time the agreement was made. It appears that the lots owned by Music had a depth of 120 feet, from east to west, and a width of 25 feet each, fronting on a street on the west and an alley on the east. Across the alley to the east, Martin owned six lots on which he had his private residence and a motel. Martin's northernmost lot was opposite Music's southernmost lot. The Big Sandy River lies some 600 feet west of Martin's property, and he desired to run the sewer line from his property to the river.

Martin's evidence was that he first proposed to construct his sewer down the alley between his lots and those of Music, but that Music, upon learning of this plan, offered to let the sewer cross his lots, in return for an intake connection privilege. Martin testified that the understanding was that Music was to build a home on his lots, and that the sewer connection was for that purpose.

Music's evidence was that Martin did not want to run his sewer down the alley, for fear that it then would be classified as a public sewer, to which anyone could connect; that Music offered to let the sewer go across his lots in return for a connection privilege; that there was no understanding that the intake was to be limited to one dwelling to be erected by Music, but on the contrary it was clearly understood that the intake was to be available for each of the eight lots.

Martin's sewer is a six-inch main, which the appellees' evidence tends to show is capable of handling the sewage from their buildings, in addition to that from Martin's properties, with no difficulty. On the other hand, Martin testified that the sewer line had a low grade of descent, and that in times of heavy rains, when the river was high, there would be danger of the sewer backing up into his basement. He complains particularly of the proposal of the appellees to connect their eaves and downspouts to the sewer, which he claims will create too great a flow of water for the sewer line to accommodate.

Martin maintains that the agreement provides for an easement in gross, rather than one running with the land. He relies upon Mannin v. Adkins, 199 Ky. 241, 250 S.W. 974, which we do not consider to be in point. In that case, the grantor of a piece of property reserved the right to " 'have, use, and get coal off the lands hereby conveyed for fuel for his own purposes or home consumption as fuel' ". The court held that the reservation was personal to the grantor, and did not run with the adjoining land which he occupied as his home place at the time of the conveyance. There, the reserved privilege was not related to a particular piece of property as a dominant estate, and it necessarily was personal. Here, the sewer connection privilege necessarily is limited to the parcel of land over which the sewer line runs.

If an easement is to be exercised in connection with the occupancy of particular land, then ordinarily it is classified as an easement appurtenant. 28 C.J.S., Easements, § 4(b), p. 635. We think it is clear that the right to connect to Martin's sewer line was to be exercised only in connection with the occupancy of the land through which it ran, and that Music was not granted the right to run a sewer line to the intake point from some parcel of land he might own or acquire in another block. Therefore, the easement must be considered to be an easement appurtenant.

It is the general rule that easements in gross are not favored, and that an easement will never be presumed to be a mere personal right, when it can fairly be construed to be appurtenant to some other estate. 28 C.J.S., Easements, § 4(c), p. 638. This rule prevails in Kentucky. Buck Creek R. Co. v. Haws, 253 Ky. 203, 69 S.W.2d 333.

We think the controlling question is whether the use of the sewer by Wells and Allen, as well as by Music, will unduly burden the servient tenement (in this case, the sewer line). It appears to be the general rule that the dominant estate may be divided or partitioned, and the owner of each part may claim the right to enjoy the easement, if no additional burden is placed upon the servient estate. 17 Am.Jur., Easements, sec. 126, p. 1014.

Here, it cannot be ascertained from the written agreement, nor can it be ascertained with certainty from the evidence of the circumstances and conditions surrounding the execution of the agreement, just what burden it was contemplated might be imposed by way of connection with the sewer line. As far as the face of the agreement is concerned, Music could have built an apartment house, a hotel, or even a factory, upon his lots, and connected them with the sewer. Either of these would have required only one intake connection. The agreement does not limit the kind of use that Music was to make of the sewer. Since, under the words of the agreement, Music could have placed a much greater burden upon Martin's sewer we do not believe that two or three dwellings will increase the burden contemplated by the parties as expressed in their agreement.

If we go beyond the words of the agreement, and accept all of the evidence as to what the parties intended, then we find a conflict of evidence, upon which we could not say that the chancellor erred.

The judgment is affirmed.

COMBS, J., not sitting.