GEORGE COX AND LEONARD DETRICK, APPEL-
LANTS, *v.* GLENBROOK COMPANY, A DELAWARE
CORPORATION, RESPONDENT.

No. 4479

May 17, 1962                                    371 P.2d 647

[Rehearing denied June 12, 1962]

*Bible, McDonald & Jensen* and *Donald L. Carano,* of
Reno, for Appellants.

*Laxalt and Laxalt,* of Carson City, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

In this case, Glenbrook Company, a family corporation, by complaint, and Cox and Detrick, copartners, by answer and counterclaim, each request a declaratory judgment as to the scope and extent of a certain right-of-way herein referred to as the "Quill Easement," granted Henry Quill by the Glenbrook Company in 1938. The conveying instrument reads:

"That said grantor, in consideration of the sum of ten dollars ($10.00), lawful money of the United States of America, to it in hand paid by the grantee, receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell and convey to the said grantee an easement and right-of-way, with full right of use over the roads of the grantor as now located or as they may be located hereafter (but such relocation to be entirely at the expense of the grantor) from the State Highway known as U. S. Route 50 to the following described property: [description of Quill property]

"To have and to hold said right-of-way and easement unto the said grantee, his heirs and assigns forever."

1. *The facts.* The relevant facts are not disputed. The Quill property contains 80 acres. Henry Quill died in 1943. In 1945 the administratrix of his estate sold the property, with appurtenances, to Kenneth F. Johnson for $8,600. In 1960 Johnson sold the property to Cox and Detrick for $250,000, $50,000 down, with the balance secured by trust deed and payable over an extended period.

Cox and Detrick propose to subdivide their property into parcels of one acre or more, resulting in a minimum of 40 or a maximum of 60 separate parcels.[1] The building on each parcel is to be limited to a residence and a guesthouse. Permanent, as distinguished from seasonal, homes are planned. A commercial development of the property is not contemplated. Zoning will permit the proposed development. Cox and Detrick have incurred expenses of about $17,000 in preliminary development work, including leveling of the "back road," drilling a well, testing the soil, and staking out four 1-acre parcels which were released from the deed of trust. In leveling the "back road," four pieces of equipment were taken on a transport from U. S. Highway 50 to said road. In doing the work some trees were "barked" and at least two trees were knocked down. The "back road" was too narrow to permit passage of the caterpillars. An advertising program to sell the individual parcels was commenced. Cox and Detrick anticipate a fully developed subdivision in 10 years. The 80 acres are said to be surrounded on two sides by the property owned by George Whittel, and on two sides by the property of Glenbrook Company. The Quill Easement is the only existing ingress to and egress from that tract.

The property of Glenbrook Company fronts on Glenbrook Bay, Lake Tahoe. For more than 25 years it has operated a resort business. Its facilities consist of a beach, approximately 30 guest cottages, a tennis court, riding stables, foot paths for hiking, horse trails for riding, a golf course, a post office, a rodeo area, a service station, a bar, and a dining room and lounge at the Glenbrook Inn. The golf course may be used by nonguests upon paying a higher green fee. The bar is open to the public, as is the dining room when not completely reserved by guests. There is no gambling. Glenbrook is operated on a seasonal basis from mid-June through September and is widely known as a beautiful summer vacation resort for families, many of whom return year after year. The atmosphere sought to be maintained is

---

[1] The lower court apparently assumed that 80 separate parcels would be created. The evidence does not bear this out.

that of peace, seclusion and quiet. The roads through the property are generally unpaved except for the main road from U. S. Highway 50 to the golf course. At the entrance to the main road is a sign stating that permission to pass over is revocable at any time. The main road is the only way in or out from the Glenbrook properties. In years past, from time to time, Glenbrook Company has sold small parcels of its property to individuals. In each instance it has granted the purchaser a right-of-way for ingress and egress.

To get to the Cox and Detrick property one may take either the "golf course road" or the "back road." Before this action started, the "golf course road" was fenced off at the point indicated. A portion of the "back road" was built in 1936 to provide a way to water tanks which supplied water for the golf course. In the late 1930's it was extended to the Quill (now Cox and Detrick) properties. Glenbrook Company, because of friendship with Quill, supplied the tractor and blade used in so extending the road. The road was, and is, narrow and unpaved. In most places it is wide enough for only one car. Trees, rocks and manzanita generally border it. There is an occasional "turn out." A worker, who extended the road to the Quill property in the late 1930's, stated that Quill just wanted "a rough road, so that he could go on up with a car." Cox frankly stated that he would like to use the "back road" if it "were passable," and that he definitely wanted to widen the road. That road has seldom been used by anyone except the four or five families having homes along its course, and their guests.

2. *The lower court's judgment.* After trial before the court without a jury, judgment was entered declaring that the Quill Easement is limited in three respects: (a) "to such uses as are and will be reasonably consistent with the use to which the servient property is employed, that is, a conservative, family, mountain resort operation, and is further limited, as to reasonable use, to the use contemplated in the original grant to Quill, that is, access to and egress from the entire dominant parcel by a single family in occupancy, and their guests"; (b) "to use of the Glenbrook roads as those

roads are presently constructed and maintained, or as the Glenbrook Company by its own action or by mutual agreement with interested parties, may hereafter locate and construct roads in the Glenbrook estate"; and (c) that "The proposed use of the so-called Quill Easement by the defendants herein, that is, the use of the Glenbrook roads by purchasers of subdivided parcels of the former Quill property, would constitute an illegal and unjustified burden and surcharge upon the servient estate."

3. *Area of contention.* The primary contentions which we are called upon to resolve are: first, whether the Quill conveyance with regard to its extent is clear and without ambiguity; and, second, whether the limitations of its use placed thereon by the lower court are justified by the law and the facts presented. The assignments of error by appellants Cox and Detrick are primarily directed to these two areas of contention and related matters. However, they also assigned, as error, two incidental points which are referred to and disposed of by footnote.[2]

4. *Is the Quill conveyance clear as to its extent?* We have heretofore quoted the Quill Easement. By its terms the grantor conveyed "an easement and right-of-way, with full right of use over the roads of the grantor as now located or as they may be located hereafter * * * from the State Highway known as U. S. Route 50 to the following described property: * * *." The trial court

---

[2](a) Cox and Detrick objected to hearsay evidence offered to show that the Quill conveyance was gratuitously given. Ruling upon the objection was reserved, and the record does not reflect that a ruling was ever made. The original findings determined that a nominal consideration was paid for the conveyance. That finding was deleted upon motion of Cox and Detrick. The amended findings are silent on the subject. In the absence of a ruling upon the objection, and it being apparent that the point had no significance in the determination of the case, there can be no merit to this claim of error.

(b) Cox and Detrick urge that the lower court took judicial notice that the use of the Glenbrook roads was exclusive in nature. The record simply does not establish this to be so. It reflects only that the "court has first-hand knowledge of that condition"; it does not tell us what "that condition" was or is. Obviously this claim of error is without validity.

announced in a conclusion of law that the terms of the grant are not so clear and precise as to exclude interpretation regarding its true extent and limit. The appellant subdividers urge that the meaning of the conveyance is clear; that "full right of use" cannot mean a restricted or limited use; that the lower court should not have looked to extrinsic evidence to aid it in ascertaining the parties' intention at the time the grant was made. On the other hand, Glenbrook Company argues that the phrase "full right of use" must be considered in the light of circumstances existing at the time the grant was made, and the actual use of the way thereafter; that such circumstances are relevant and admissible to aid the court in ascertaining the extent of an easement created by conveyance.

No issue regarding admissibility of evidence was raised during trial. Objection was not made to any of the evidence offered, except as to testimony relating to whether the grant was gratuitously made, which we have already discussed.[3] Yet the court below, by way of a conclusion of law after trial, held that it could refer to "extrinsic evidence" for the purpose of interpreting the meaning of the grant with regard to its "true extent and limits." The record does not reveal what "extrinsic evidence" was considered by the lower court for this purpose, and we do not propose to speculate in this connection.

By the phrase "extent of an easement" is meant the scope of the privilege of use authorized by the easement. Here the grantor conveyed an easement with "full right of use." To our mind, that phrase is clear and without ambiguity. It may not, under the veil of interpretation,

[3]The reason for the absence of objection is evident. No person was available to testify that the terms of the grant did not state the true intention of the persons named therein. W. M. Bliss, who signed as vice president of grantor, is dead. His cosignor for grantor, Herbert E. Hall, at that time its assistant secretary, did not testify and the record does not tell us why. The grantee, Henry Quill, died in 1943. A witness was not presented who sought to declare the intention of those persons as being different than expressed in the grant of easement. Had such testimony been offered, perhaps objection would have been made. Under the circumstances here presented, no reason existed for any party to object to the evidence offered.

be considered to mean a "restricted right of use." Keeler v. Haky, 160 Cal.App.2d 471, 325 P.2d 648. In *Keeler*, the grantor gave "the full and free right, \* \* \* to pass and repass along, over and upon said private road \* \* \*." The court there said: "The language of the grant deed, dated April 17, 1934, is clear and free from ambiguity and does not create such a condition as to require or authorize the court to consider extrinsic evidence as to the meaning of the written agreement between the parties." Furthermore, the court held that the right to pass and repass over the private road was unrestricted.

The process which creates an easement necessarily fixes its extent. The extent of an easement created by prescription, is fixed by the *use* which created it. Likewise, the extent of an easement created by conveyance is fixed by the conveyance, Restatement, Property, sec. 482, comment (a), at p. 3010, if clear and unambiguous.[4]

We therefore conclude that the trial court committed error in deciding that the phrase "full right of use" was subject to judicial interpretation. This error probably resulted in the restrictions placed upon the Quill Easement by the judgment entered. However, we cannot be certain that this is so. In any event, it is our view that the judgment is too restrictive in certain respects, incomplete in others, and premature as to a third aspect of the litigation. It will be our purpose to point out wherein the judgment imposes unwarranted restrictions upon the possessors of the dominant tenement, to define the rights of the parties in the areas where the judgment is silent, and announce why, as to a certain phase of this case, a definitive determination cannot yet be made.

5. *The unwarranted restrictions.* (A) We shall first

---

[4]Glenbrook Company urges that the trial court, by virtue of the "rule of practical construction" could properly consider evidence of the actual use of the way by predecessors of Cox and Detrick, to fix the extent of the use created by the conveying instrument. That rule does not apply where the instrument is clear. Woods v. Bromley, 69 Nev. 96, 241 P.2d 1103.

discuss that portion of the judgment restricting the use to ingress to and egress from the entire dominant parcel "by a single family in occupancy and their guests." Such a restriction, in our view, destroys the appurtenant character of the easement. Yet, there can be no question but that the Quill Easement was appurtenant to the 80-acre tract then owned by him. The terms of the conveyance, "to have and to hold said right-of-way and easement unto the said grantee, his heirs and assigns forever," make it clear that one who succeeds to the possession of the dominant tenement, succeeds as well to the privileges of use of the servient tenement authorized by the conveyance. Furthermore, those who succeed to the possession of each of the parts into which the dominant tenement may be subdivided, also succeed to such privileges of use, unless otherwise provided by the terms of the conveyance. Bang v. Forman, 244 Mich. 571, 222 N.W. 96; Crawford Realty Company v. Ostrow, 150 A.2d 5 (R.I. 1959) ; Restatement, *Property*, sec. 488, comments (b) and (c) ; Akers v. Baril, 300 Mich. 619, 2 N.W.2d 791; Hewitt v. Perry, 309 Mass. 100, 34 N.E. 2d 489; Martin v. Music, 254 S.W.2d 701 (Ky. 1953) ; Annots., 8 A.L.R. 1368, 34 A.L.R. 972. The Quill conveyance does not contain a restriction that the easement granted is to be appurtenant to the dominant estate only while such estate remains in single possession, and none may be imposed by judicial declaration.

(B) The judgment further restricts the use of the easement to "use of the Glenbrook roads as those roads are presently constructed and maintained." We are uncertain as to the precise meaning of this restriction. If such language prohibits the owner of the dominant estate from making *any* improvements or repairs of the way, it is too restrictive. As a general rule, the owner of an easement may prepare, maintain, improve or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created. The owner may not, however, by such action, cause an undue burden upon the servient estate, nor an unwarranted interference with the independent rights

of others who have a similar right of use.[5] Annot., 112 A.L.R. 1303. The action of Cox and Detrick in leveling or "rough grading" the "back road," to the extent that it was confined to the area within the exterior borders of the road as they existed when the easement was originally granted, was an improvement reasonably calculated to promote the purposes for which the easement was created. Such leveling or rough grading as so confined, would not, in itself, cause an undue burden upon the servient estate, nor constitute an unwarranted interference with the easement rights of other private property owners.

However, their conduct in attempting to widen the way is another matter. A careful study of the record makes it clear that the ultimate intention of the subdividers is to widen the "back road" in order that two cars going in opposite directions may pass comfortably at all points along its course. The conveying instrument does not specify the width of the way expressly; it does, however, refer to the "roads as now located." The "back road" as it existed at the time of the grant of easement, was described as a "small road," and wide enough for just one car. The record does not disclose that the predecessors of Cox and Detrick ever sought or attempted to widen the "back road." There is no evidence tending to indicate that either Glenbrook Company or Henry Quill contemplated or intended a wider road than existed when the grant was made. When the width is not specified, the conveying instrument must be construed in the light of the facts and circumstances existing at its date and affecting the property, the intention of the parties being the object of inquiry. Annot., 28 A.L.R.2d 253. Lipsky v. Heller, 199 Mass. 310, 85 N.E. 453; Dunham v. Dodge, 235 Mass. 367, 126 N.E. 663; Drummond v. Foster, 107 Me. 401, 78 A. 470. Indeed, it is sometimes

[5]The factual background related mentions other property owners to whom Glenbrook Company has given similar rights of ingress and egress. To the extent mentioned by the general rule of law, this litigation is of significance to them.

held, *as a matter of law*, that where the width of a right-of-way is not specified in the grant, it is limited to the width as it existed at the time of the grant. Good v. Petticrew, 165 Va. 526, 183 S.E. 217. We need not go that far. We believe that the intention of the parties at the time of the grant, when there is evidence to indicate such intention, controls as to width.[6]

As already stated, the only evidence in the record with reference to the "back road" indicates that Henry Quill desired a way wide enough for one car; that such was the character of the "back road" at that time, with occasional "turn outs." We must conclude, therefore, that such was the parties' intention in 1938 when the grant was made. If the *width* of the way is what the lower court had in mind when it restricted the easement to "use of the Glenbrook roads as those roads are presently constructed and maintained" (the record revealing no substantial change from 1938 to time of trial, except for the work of Cox and Detrick before mentioned), then we find ourselves in accord.

6. *Area wherein judgment is silent.* Glenbrook Company erected a fence or barrier across the "golf course road" at or near the point indicated on the sketch. Cox and Detrick desire permission to use that road. They removed the barrier, but it was again erected by Glenbrook Company. The predecessors of Cox and Detrick used the "back road" for ingress and egress; the "golf course road" was, however, used occasionally. The judgment below does not touch on this aspect of the case.

The conveyance gave full right of use over "the roads." Both roads existed at that time. However, the conveyance also permitted relocation of the roads by Glenbrook Company at its own expense.

The evident purpose of the conveyance is to assure ingress to and egress from the dominant parcel, over the servient estate, to U. S. Highway 50. It is admitted

---

[6]The "full right of use" phrase, previously discussed, does not embrace the problem of width. There can be a "full right to use" a narrow as well as a wide road.

by Cox and Detrick that Glenbrook Company could discontinue the use of, or barricade the existing roads, and relocate them without infringing upon the Quill Easement so long as ingress and egress was given to the dominant parcel over the roads as relocated. The action by Glenbrook Company in barricading the "golf course road" is, to a degree, a "relocation" of that portion of the right-of-way, and authorized by the terms of the conveyance. Cf. Heyna v. Lyons, 228 Ky. 211, 14 S.W.2d 766; Lyon v. Lea, 84 Me. 254, 24 A. 844. The purpose of the conveyance is not frustrated by such conduct.

7. *Area wherein judgment is premature.* The judgment entered also declared that the *proposed use* of the Quill Easement *would* constitute an illegal burden and surcharge upon the servient estate. This declaration, we believe, deals with the subject with which the parties are most deeply concerned. They earnestly desire a specific declaration of their legal rights arising out of the Quill conveyance in order that their *future* courses of action may be planned. Though this be so, every judgment following a trial upon the merits must be based upon the evidence presented; it cannot be based upon an assumption made *before* the facts are known or have come into existence. The announced intention by the owners of the dominant estate as to their proposed future use of the easement does not, of itself, constitute an unreasonable burden upon the servient estate. When the facts concerning that use become known, an unreasonable burden upon the servient estate may, or may not result. That determination must await the presentation of evidence then in existence.

NRS 30.110 of the Uniform Declaratory Judgments Act contemplates that the determination of an *issue of fact* is to be tried and determined in the same manner as issues of fact are tried and determined in other civil actions. All parties concede that the issue as to whether the actual use to which an easement is devoted, constitutes an unreasonable burden upon the servient estate, is primarily a question of fact and not of law. The authorities so hold. Bang v. Forman, 244 Mich. 571, 222

N.W. 96, a subdivision case, where the court said, "The extent to which the use of the easement had been increased was a question of fact for the court."; Wall v. Rudolph, Cal.App., 18 Cal.Rptr. 123, 131, "Ordinarily the question of whether there has been an unreasonable use of an easement is one of fact * * *."; Siedler v. Waln, 266 Pa. 361, 109 A. 643, 645, 8 A.L.R. 1363, where the court stated, "While 'it is difficult, if not impossible, to lay down a clear and definite rule to determine what may be construed a reasonable and proper use [of an easement], as distinguished from an unreasonable and improper one, and such questions must, of necessity, be usually left to the determination of a jury or the trial court, as questions of fact,' * * *, here the chancellor has found the facts against defendants; and we are not convinced of reversible error in that regard."

A distinction must be drawn between the *construction* of a writing as contemplated by NRS 30.040 of the Uniform Declaratory Judgments Act, and the determination of an issue of fact provided for by NRS 30.110 of that act. As applied to the case before us, matters respecting the *extent of the privilege to use* the easement are governed by the terms of the instrument itself, if mentioned. The phrase "full right of use" as used therein we have declared to be clear, and not the subject of interpretation. On the other hand, the problem respecting the width of the way, which was not designated by the instrument itself, was the subject of determination based upon factual information in existence and received during trial. The conveying instrument was, therefore, interpreted to mean the width of the way as it existed at the time of the grant. Each of these matters dealt with the *extent of the privilege of use.*

However, problems arising from the *actual use* of the way as distinguished from the *privilege to use* it, do not, in most cases, depend upon a *construction* of the conveying instrument, but rather upon the consequences resulting from such *actual use.* This being so, factual circumstances which may arise in the future cannot be fairly determined now. As to this phase of the case we

are asked to make a hypothetical adjudication, where there is presently no justiciable controversy, and where the existence of a controversy is dependent upon the happening of future events. Cf. Prashker v. United States Guarantee Company, 1 N.Y.2d 584, 154 N.Y.S. 2d 910, 136 N.E.2d 871. A declaratory judgment should deal with a present, ascertained or ascertainable state of facts. See Hunt v. Smith, 137 So.2d 232 (Fla.App. 1962), where plaintiff asked the court to decree that it would have an easement of necessity if certain events occurred in the future.

Indeed, Glenbrook Company has stated that its purpose in initiating this suit is not to enjoin the proposed subdivision. It is vitally interested, however, in maintaining the atmosphere of peace, seclusion and quiet for which it is widely known. Whether a subdivision, on the one hand, can coexist with the maintenance of such an atmosphere, on the other, cannot now be determined because of the lack of sufficient evidence. Consequently, a judgment cannot now be announced which will supply all of the answers desired by the parties. For example: Suppose we were to assume a completed subdivision, 40 or 60 homes with guesthouses, within 10 years, and declared, at this time, that the use of the Quill Easement by the possessors of the subdivided parcels, would unreasonably burden the servient estate. Such a declaration by us would not determine whether such use by a lesser number would likewise surcharge the servient estate. Nor can we forecast whether the character of Glenbrook will remain the same or change within the next 10 years. There is no feasible method, at this time, by which we can declare *in advance* the point at which the burden upon the servient estate becomes unreasonable. Such court declaration must await the knowledge and presentation of proper evidence. In our judgment the lower court erred in declaring that the *proposed* use of the Quill Easement would constitute an unreasonable burden upon the servient estate, in the absence of existing evidence. It should have done no more than to announce, in general terms, the applicable legal principle within

which a subsequent factual determination could be made if occasion therefor arises.

*Conclusions:* From the foregoing it is apparent that the parties seek a declaration of rights in the following respects:

1. The scope and extent of the easement as described by the words "full right of use" in the conveying instrument.

2. The legal right, if any, of the owners of the easement to maintain, repair and improve the way.

3. The legal right, if any, of the owners of the easement to widen the way.

4. The legal right, if any, of the owner of the servient estate to barricade that portion of the way referred to as the "golf course road."

5. A declaration now as to whether uses of the way, concomitant with a future proposed subdivision, will, if completed, or during the course of its development, cause an unreasonable burden upon the servient estate.

As to these matters, we conclude:

*First:* The privilege of use of the Glenbrook roads as located on January 7, 1938 (the date of the grant of easement) is not restricted by the terms of the grant, and is appurtenant to the dominant estate, and may be enjoyed by those who succeed to the possession of the dominant estate in its entirety or by those who succeed to the possession of the parts into which such estate may be subdivided.

*Second:* The owners of the easement may maintain, repair and improve the way in a manner reasonably calculated to promote the purposes for which the easement was created, provided, however, (a) such maintenance, repair or improvement is confined to the area within the exterior borders of the way as it existed on January 7, 1938 (the date of the grant of easement); (b) that such maintenance, repair, or improvement will not cause an undue burden upon the servient estate; (c) that such maintenance, repair or improvement will not cause an unwarranted interference with the independent rights of others who have a similar right of use.

*Third:* The owners of the easement may not widen the way, its width being limited, by reason of the evidence introduced, to the width of the way on January 7, 1938 (the date of the grant of easement) ; and, insofar as the portion of the way herein referred to as the "back road" is concerned, that width is sufficient only for one car with occasional "turn outs."

*Fourth:* The owner of the servient estate has the right to relocate the way at its own expense, which right includes the right to barricade that portion of the existing way herein referred to as the "golf course road."

*Fifth:* The owners of the easement may not, by reason of their proposed subdivision development, or otherwise, cause an undue burden upon the servient estate, or an unwarranted interference with the independent rights of others who have a similar right of use. Whether such a burden or interference will occur cannot be conclusively declared upon existing evidence. In the event the owners of the easement proceed with their announced plan, their use of the way is limited to the extent herein noted. We believe it proper, however, at this time, to note that, should they proceed with their proposed plan, the trier of the facts in subsequent litigation, if it occurs, might or might not determine upon evidence then existing, that their use of the way causes an unreasonable burden upon the servient estate or an unwarranted interference with the independent rights of others who have a similar right of use; hence, any further action on their part to develop their property in the manner proposed is subject to such contingency.

Modified and remanded for judgment in accordance with this opinion. Each party shall bear his own costs on this appeal.

McNAMEE, J., concurs.

BADT, C. J., concurring:

I concur in the conclusions reached by Mr. Justice Thompson, but fear that some of the expressions used in the opinion might in some future case be taken to limit unduly the power of the court in actions under the Declaratory Judgments Act. While it is undoubtedly true

that "factual circumstances which may arise in the future cannot be fairly determined now," it is likewise true than an expressed purpose and intention to perform acts that will, under satisfactory proof, surcharge the servient tenement with an unreasonable burden is a present threat of invasion of plaintiff's rights and subject to declaratory determination. It need not await the event. NRS 30.030, 30.040, 30.050, 30.070, 30.140. See Kress v. Corey, 65 Nev. 1, 189 P.2d 352, and cases therein cited.