W. D. SNOW, APPELLANT, v. PIONEER TITLE INSURANCE COMPANY AND THE MESA CORPORATION, NEVADA CORPORATIONS, RESPONDENTS.

No. 5428

August 1, 1968                    444 P.2d 125

[Rehearing denied September 19, 1968]

*Guild, Guild & Cunningham,* of Reno, for Appellant.

*Sidney W. Robinson,* of Reno, for Respondent Pioneer Title Insurance Company.

*Hawkins, Rhodes & Hawkins,* of Reno, for Respondent The Mesa Corporation.

## OPINION

By the Court, MOWBRAY, J.:

This case concerns a right claimed by the owner of certain land to take and use underground water through a well located on adjacent land of another owner.

The facts are well explained in the decision of the trial court, from which this summary is adopted.

Both parcels in question originally comprised a single property known as the Anderson Ranch, in Washoe County. The property is situated north of the Mt. Rose Highway and is in the general area of The Lancer, or Mesa Night Club, as it was formerly known. The entire property, prior to 1947, was owned by Thomas R. Anderson and his wife, Mildred. On July 10, 1947, Anderson and one John T. Coffee, Jr., entered into a partnership for the operation of the Mesa. For reasons best known to themselves, they entered into a dissolution agreement which was dated December 13, 1948, with Anderson conveying his interest in the Mesa to Coffee on December 13, 1948. This agreement is known as the Anderson-Coffee Agreement. Paragraph 8 of the agreement provides as follows:

"8. Second party agrees to transfer and set over unto first party in connection with his conveyance to first party of the real property described in Paragraph 4 hereof, all water rights, waters, ditch rights and ditches which he may have in connection with or appurtenant to the said real property; and second party further agrees that he will use his best efforts in every respect to assist first party in obtaining water rights and waters for use by first party in the maintenance of the said business known as THE MESA; and second party particularly agrees in this respect to give, make available to and transfer to first party any priority for water rights or waters which he has by reason of domestic water use or other water uses in connection with the aforesaid real property or in connection with those certain premises known as the ANDERSON RANCH and adjacent to said business known as THE MESA, sufficient, however, only for the maintenance of said business known as THE MESA."

Below the signatures of the two parties appears paragraph 9, which reads as follows:

"9. Second party agrees that first party shall have the right

to drill a well and the right of access thereto on and over the said premises known as the ANDERSON RANCH."

This agreement was not recorded until March 30, 1953.

On July 24, 1950, Thomas R. Anderson, as part of a divorce settlement, conveyed his interest in the Anderson Ranch to his then wife, Mildred, and this deed was recorded the following day. She undoubtedly knew of the existence of the Anderson-Coffee Agreement and its terms and conditions.

By virtue of the Anderson-Coffee conveyance and the Anderson-Anderson conveyance, the so-called Anderson Ranch was divided into two contiguous parcels, from which various subsequent conveyances branched off.

So far as the "Anderson-Anderson" portion of the ranch is concerned, it appears from the records that Mildred Anderson, on March 23, 1953, entered into an option agreement with Mrs. Lettye E. Winniman and Mrs. Helen Neal to purchase the Anderson Ranch. This agreement was recorded on July 22, 1953. In June of 1956 Mrs. Anderson, then known as Mildred McMahan, conveyed the Anderson Ranch to Mrs. Winniman and Mrs. Neal. This deed was recorded on June 14, 1956. At the time the conveyance was made, Mrs. Winniman has actual knowledge of the Anderson-Coffee Agreement and the terms thereof, and of the existence of a pipe line across a portion of the Anderson Ranch, through which The Mesa Corporation was obtaining water.

It appears that early in 1960 a Mr. I. E. Nitschke, on behalf of Mesa, approached Mrs. Winniman to discuss the location of a well which Mesa proposed to drill on the Anderson Ranch property, pursuant to the terms of the Anderson-Coffee Agreement. The location of the well was agreed upon after several meetings, and the well was completed in June of 1960 at the expense of Mesa. In 1962 the well was deepened because it had gone dry. That well, known as Well No. 3, is the subject of this litigation.

On August 31, 1960, Mrs. Winniman and Tom and Dick Neal entered into a contract of sale of real property with Snow. It is undisputed that Snow knew of the existence of the well, the pipe line, and the road providing access from the Mt. Rose Highway to the well. There is a question as to whether Snow knew of the existence of the Anderson-Coffee Agreement and the terms thereof at the time he purchased the property.

Thereafter, on April 29, 1964, Snow demanded of Mesa that it remove its pipe line and other equipment from said property and that it abandon its claim to the use of the well and the water. This demand was refused.

With respect to the conveyances emanating from the Anderson-Coffee Agreement, it appears that on September 30, 1957, Coffee transferred the Mesa to Arthur V. Allen and assigned all of Coffee's rights and interest created under paragraphs 8 and 9 of the Anderson-Coffee Agreement. This assignment was recorded on November 22, 1957. On November 25, 1957, Allen transferred the Mesa property to The Mesa Corporation and assigned all rights and interest under paragraphs 8 and 9 to The Mesa Corporation. This assignment was recorded on January 27, 1958.

Pioneer Title Insurance Company issued its policy of title insurance insuring title in Snow as a contract purchaser of the Anderson Ranch property against loss or damage by reason of any defect in or lien or encumbrance on the title to the property purchased by Snow. That title policy did not make reference to the Anderson-Coffee Agreement.

Snow brought this action against the Title Company to recover damages in the approximate amount of $19,000 for the alleged loss in value of his land by reason of Mesa's water right. Mesa intervened to seek judicial confirmation of its water right and an injunction against any interference therewith by Snow. The Title Company defended primarily on the ground that Snow had knowledge of the water right when he contracted to purchase the servient property. Snow added to his original demand a claim for recovery from the Title Company of his litigation expenses against Mesa and a claim against Mesa for breach of an alleged agreement to supply water to his property.

The three parties, each seeking to uphold its interest regardless of any determination concerning the others, have advanced a maze of alternative theories and conclusions of law for our consideration. We have considered them all, but need discuss only four issues, for in our view the resolution of these is sufficient to sustain the judgment of the trial court.

1. The chain of title. As appellant suggests, the primary issue is whether the Anderson-Coffee Agreement, first recorded in 1953 after Thomas R. Anderson had conveyed his interest in the Anderson Ranch to his then wife, was shown by the public records as an encumbrance against the property purchased by Snow. Certainly it appears, physically, on the record. The question is, therefore: How far must one go who searches the record for encumbrances?

Nevada law provides expressly for the maintenance of separate indexes of grantors and grantees. NRS 247.150. These indexes have a degree of independent effect. For example, the date of indexing determines the date from which an instrument

copied into the wrong record book but correctly indexed imparts constructive notice (NRS 247.160), and entry in a new category of the index imparts constructive notice of the contents of the instrument, though the instrument itself is recorded only under the old category (NRS 247.170).

The majority rule is that, where such indexes are maintained, the searcher need examine the grantor index under the name of a previous owner of the property only during the period such owner is shown by the record as the owner—that is, from the date of the conveyance to him until the date of the first conveyance of his entire interest away from him. Any instrument executed by such an owner which is recorded before his acquisition or after his relinquishment of title is considered outside the "chain of title." 6 Powell, Real Property 293; 8A Thompson, Real Property (1963 Replacement) § 4340. In an extensive series of articles by Francis S. Philbrick, the most relevant of which appears at 93 U.Penn.L.Rev. 391, it is explained that this restriction affords the only practicable method of modern title search, for the alternative would require (in Nevada) searching the records of a century under the name of an owner who might have held title for but a week.

Applying this rule to the case at bar, the Anderson-Coffee Agreement was not within the chain of title and so was within the exclusion from Snow's title insurance policy of "easements, liens or encumbrances which are not shown by the public records." The Title Company therefore had no duty to Snow either (1) to make good any damages which he might sustain from the existence of the Anderson-Coffee Agreement or (2) to defend him against Mesa's assertion of its rights under the agreement.

2. Purchase with notice. The absence of constructive notice to Snow or to the Title Company from the public record of the Anderson-Coffee Agreement does not, however, relieve Snow, as Anderson's successor in interest, from its provisions.

The record shows that Mrs. Winniman, Snow's immediate grantor, had actual knowledge both of its existence and of its terms. Whether she imparted any of this knowledge to Snow is disputed. The record does clearly show that Snow, prior to purchasing the servient property, did know of the existence of (1) the well serving The Lancer restaurant, (2) the pipe line from the well to The Lancer, and (3) the road from the highway to the well. This was sufficient, under the rule established by Lanigir v. Arden, 82 Nev. 28, 409 P.2d 891 (1966), and the

cases there cited, to raise a duty of further inquiry. He did not inquire, either of Mrs. Winniman or of Mesa, the owner of The Lancer. He therefore took with constructive notice—not from the record, but from this duty—of what inquiry would have revealed, namely, the Anderson-Coffee Agreement.

3.   Effect of easement created.   It is therefore necessary to determine (1) what rights were initially created by this agreement and (2) whether any of these rights were afterwards relinquished. The record contains facts, specifically pointed out in the written decision of the trial judge, sufficient to sustain the trial court's finding that paragraph 9 was an integral and contemporaneously executed part of the agreement.

Construing paragraphs 8 and 9, therefore, together, we concur in the trial court's view that the intention of the parties was to vest in Coffee the right to sufficient water for the restaurant operation, taken from wherever on the Anderson Ranch such water might be found. Read in the light of this interest, the phrase "to drill a well" points out a specific method of obtaining water as included in the grant, but does not limit the grant to one particular well.

The record discloses that, at the date of the execution of the Anderson-Coffee Agreement, the restaurant drew its water from a creek on the ranch. Had the parties expected this source to remain sufficient, they would not have added the language concerning a well. In fact, the creek did not suffice. Its use, both directly and through a sort of leaching well, was forbidden by health authorities. The well, therefore, was a provision against a contingency. Another contingency, easily to be foreseen by the parties, was that drilling at any given point might find no water, or that a well instantly brought in might go dry. Again the record shows both the drilling of several dry holes and the actual deepening of the well now used because it went dry. In view of this expression, it would be illogical to say that the drilling of one hole, or even the development of one well now producing, satisfied the intent of the parties and exhausted the easement for all time.

By the same reasoning, the act of Mesa, through its agent, Nitschke, in consulting with Mrs. Winniman—then owner of the servient property—about the location of the proposed well, should not be construed as a waiver of the easement or as the creation of a new agreement. It is therefore unnecessary to discuss whether such an oral agreement would have been enforceable despite the Statute of Frauds (NRS 111.220), and Snow's claim that Mesa breached the agreement must fall.

4. Denial of new trial. Appellant has vigorously contended that, if this court holds he is bound by the provisions of the Anderson-Coffee Agreement, it should order a new trial to permit him to call as a witness, Thomas R. Anderson. NRCP 59(a) enumerates the grounds for a new trial, one of which is: "* * * (4) Newly discovered evidence material for the party making the motion which he could not, *with reasonable diligence,* have discovered and produced at the trial; * * *." (Emphasis added.)

Appellant contends that the testimony of Thomas R. Anderson would have conclusively refuted the interpretation of the Anderson-Coffee Agreement adopted by the trial court and sustained by us. He then makes the rather novel contention that, because such "testimony would show that the judgment was clearly erroneous, a'showing of reasonable diligence is not necessary." We refuse thus to emasculate the rule.

Alternatively, appellant contends he did use due diligence to locate this witness, but did not consider the testimony important because, under his theory of the case and Mesa's claim in intervention, the trial court should not have rendered a judgment authorizing Mesa to drill new wells if necessary in the future. This contention is sufficiently answered by noting (1) that NRCP 54(c) expressly requires the granting of all relief to which a party is entitled, not limited by the pleadings, (2) that this court has expressly affirmed the trial court's broader interpretation of the original agreement, and (3) that even if the broader relief had not been granted, the alleged loss to appellant from the single well was the foundation of his entire original complaint.

In summary, we have held that the trial court correctly decided all the relevant issues, both between Snow and the Title Company and between Snow and Mesa, and correctly denied Snow's motion for a new trial.

We must, however, caution against an overbroad interpretation either of this opinion or of the original judgment of the trial court. We have intimated that the drilling of one or more wells may be necessary in the future, and the trial court explicitly so framed its order. This grant of relief not specified in the pleadings must be narrowly construed to accomplish its purpose of the original grant, an adequate water supply to The Lancer (formerly Mesa) restaurant, and no more. The right to drill a new well, and if this fails, to continue drilling, arises only

if and when the present or some future water supply fails. If it so arises, it must be exercised with due regard for the rights of the owner of the servient estate. The location of the well and pipe line should be so chosen as to cause the least interference with existing or future development of the premises consistent with the development of an adequate water supply. As so limited, the judgment of the trial court is affirmed.

COLLINS, ZENOFF, and BATJER, JJ., concur.

THOMPSON, C. J., dissenting:

I cannot agree with the resolution of the dispute between Snow and the Mesa since the evidence does not support either the judgment of the district court or the obscure modification thereof suggested by this court.

The main issues between Snow and the Mesa are the extent of the easement created by the 1948 Anderson-Coffee agreement, and whether that easement is still viable. Neither party to that agreement testified during the trial about his intention when the agreement was prepared and executed. The easement to drill a well for water was created by and rests solely upon paragraph 9 which reads: "Second party agrees that first party shall have the right to drill a well and the right of access thereto on and over the said premises known as the Anderson Ranch."[1]

The extent of an easement created by contract is fixed by the contract, if clear, whereas the extent of an easement created by prescription is fixed by the use which created it. Cox v. Glenbrook Co., 78 Nev. 254, 371 P.2d 647 (1962). Paragraph 9 grants the right to drill a well in and over the Anderson Ranch. The location of that well is not specified by the agreement, but became fixed by use, when the first producing well was drilled, and that use measured the extent of the easement granted by paragraph 9.

The Mesa first drew water from Well No. 5, and later from Well No. 4 which was sunk at about the same spot. Well No. 4 was condemned by Washoe County as unsanitary. This circumstance extinguished the easement granted by paragraph 9. The Mesa's present source of water is from Well No. 3 completed in 1960. The then owner of the Mesa requested permission from a predecessor in interest of Snow to drill that well, and permission was given. Thus, whatever right the Mesa presently enjoys to receive water from Well No. 3 does not derive from

---

[1]Paragraph 8 of the agreement referred to by the majority opinion has nothing whatever to do with drilling a well for water. That paragraph refers to appurtenant water rights in existence when the contract was made, and to priorities. Neither is involved in this case.

the old Anderson-Coffee agreement, but rests upon an oral permission the validity of which is open to serious question.

Notwithstanding these facts the district court ruled that the 1948 Anderson-Coffee agreement gave the Mesa the right to drill multiple wells anywhere upon the Anderson Ranch property sufficient for the business of the Mesa, together with the right to pipe water therefrom with full access for inspection and maintenance. This enormously broad judgment is not supported by the Anderson-Coffee agreement upon which it professes to rest and unfairly subjects the servient estate to intolerable burdens.

I respectfully dissent.